John J. WILLEY and Linda Willey, his wife, Appellants in 84–1075,

v.

MINNESOTA MINING & MANUFAC-TURING COMPANY, Appellant in 84–1059,

v.

HAVERSTICK–BORTHWICK COMPA-NY, Appellant in 84–1076,

and

Dresher Mechanical Company, Appellant in 84–1063.

Nos. 84–1059, 84–1063, 84–1075 and 84–1076.

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1984.

Decided Feb. 20, 1985.

Charles W. Craven (argued), John P. Penders, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Minnesota Mining & Mfg. Co.

Henry T. Reath (argued), Peter J. Hoffman, Dwight Reginald Whitt, Duane, Morris & Heckscher, Philadelphia, Pa., for Dresher Mechanical Co.

James J. Donohue (argued), Mark L. Parisi, White & Williams, Philadelphia, Pa., for Haverstick-Borthwick Co.

Leon W. Silverman (argued), Stein & Silverman, Philadelphia, Pa., for John and Linda Willey.

Before HUNTER and WEIS, Circuit Judges, and COHEN, District Judge.[*]

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity case a jury awarded a verdict in favor of a subcontractor's employee who was injured while working on the defendant's premises. We conclude that the verdict is sustainable despite the defendant's assertion of trial error. We also determine that the trial judge properly ruled that, based on contractual provisions, defendant was entitled to indemnification from the general contractor which in turn was to be reimbursed by a subcontractor. Accordingly, we will affirm.

After a jury trial, plaintiff recovered a verdict against Minnesota Mining & Manufacturing Company (3M) for personal injuries received while working on the company's premises. 3M and the third-party defendants—various contractors doing refurbishing at the company's plant—submitted third-party indemnification claims to the court. After briefing but without any additional evidence, the court entered judgment in favor of 3M against Haverstick-Borthwick Company, the general contractor, and in its favor against its subcontractor, Dresher Mechanical Company. All parties have appealed various phases of the case.

3M contracted with Haverstick-Borthwick to perform certain construction work at 3M's plant in Bristol, Pennsylvania. Haverstick-Borthwick subcontracted part of the work to Dresher Mechanical, which in turn entered into a subcontract with the Wegmann Corporation.

Plaintiff, a sheet metal worker employed by Wegmann, was instructed to perform certain duct work at the 3M site. His assignment was a rush job, and his employer told him to use ladders and other equipment at the 3M plant. He took with him only his tool box.

At the worksite, plaintiff found an aluminum ladder leaning against a wall and used it to reach the ducts near the roof. As he began to burn away part of a metal duct, an employee of Haverstick-Borthwick, standing below, acted as a "fire watch."

Because his work was not completed, plaintiff returned the following day. He again used the aluminum ladder and as before, an employee of Haverstick-Borthwick acted as a fire watch. However while plaintiff was working, an employee of 3M came by and insisted that his company security guard act as fire watch. Plain-

[*] The Honorable Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation.

tiff then descended the ladder and waited. When the 3M security guard arrived, plaintiff began to ascend the ladder. After he had climbed about 8 to 10 feet, the foot of the ladder slid out from under him, causing plaintiff to fall and severely injure his ankle.

Before using the ladder, plaintiff had noticed that it lacked nonskid safety feet. According to his testimony, he did not ask the security guard to steady the foot of the ladder because it was not customary to ask employees of the customer for assistance. A foreman for Haverstick-Borthwick testified that the ladder had been in the area for several months and that he had used it himself on two earlier occasions. The 3M supervisor of safety and security conceded that his security guards had authority to take an unsafe ladder out of service.

The jury found that 3M supplied the ladder, that the company was 62 percent negligent, and that the plaintiff's contributory negligence amounted to 38 percent.

3M had filed third-party complaints against Haverstick-Borthwick and Dresher seeking contribution and indemnity based on negligence, as well as indemnity based on provisions in the construction contracts. Before the trial began, 3M withdrew its claims against the contractor and subcontractor for contribution based on negligence. The parties agreed to submit the contractual indemnification issues to the court if plaintiff recovered a verdict against 3M. Although the issue of their liability was not to be submitted to the jury, counsel for Haverstick-Borthwick and Dresher were present during the trial and participated in the interrogation of witnesses.

After the jury returned its verdict in favor of the plaintiff, the court turned to the indemnity issues. Following briefing but without any further factual submissions, the district court ruled that the indemnification clauses in the contracts required Haverstick-Borthwick to indemnify 3M and in turn, Dresher to indemnify Haverstick-Borthwick.

The contract between 3M and Haverstick-Borthwick provided that

"contractor agrees to indemnify, defend and hold harmless Owner [3M] from and against any and all common law, statutory and other liability, loss, cost and expense, including court costs and legal fees, incurred by them because of any and all . . . injuries . . . referred to in this Article, whether or not based in whole or in part upon the active, passive, concurrent (but not sole) negligence of Owner. This indemnity shall be liberally construed in favor of indemnification."

The court concluded that the "sole negligence" of 3M exception was inapplicable for two reasons. First, the jury found that plaintiff was responsible in part for the accident, and his negligence under the terms of 3M's contract was chargeable to Haverstick-Borthwick. Second, the court found "on the evidence presented, the conclusion is inescapable that Haverstick-Borthwick and its various subcontractors (for whose conduct Haverstick-Borthwick was responsible, vis-a-vis 3M) were negligent in failing to inspect and assure themselves concerning the safety of the ladder used by plaintiff."

Although conceding that the comparative negligence statute provided room for argument, the court was not dissuaded from its ruling. The contractors contended that since 3M sought indemnity only for the amount assessed against it after deducting that attributable to the plaintiff's contributory fault, the "sole negligence" exception should apply. The district judge concluded that the "sweeping language of the indemnification clause indicated that the parties did not intend a different result [because] of comparative negligence principles."

The contract between Haverstick-Borthwick and Dresher incorporated by reference the agreement between 3M and Haverstick-Borthwick, stating, "The subcontractor agrees to be bound by the terms of the aforesaid principal contract, as far as applicable to this subcontract, and to assume toward the general contractor all the obligations and responsibilities that the

general contractor, by those documents, assumes toward the owner." Dresher's contract further provides that

"The subcontractor shall carry insurance against liability for damages on account of injuries ... to all persons and injuries to the employees of the subcontractor for which the general contractor could be liable ... whether such injury ... result[s] ... by reason of provisions of the principal contract imposing or requiring the assumption of any such liability....
Subcontractor shall furnish certificates of the insurance carrier, of itself, and of its subcontractors in a form and amount as called for by the general conditions of the principal contract."

The district court read these provisions as requiring Dresher to indemnify Haverstick-Borthwick.

## I

### PLAINTIFF'S APPEAL

On appeal, plaintiff contends that the defense of contributory negligence was not available to 3M because it was guilty of negligence *per se* for violating Pennsylvania safety standards for ladders. 3M, however, avers that it was not negligent *per se* since it did not violate a statute. 3M argues that ladder safety standards enacted by the Pennsylvania Department of Labor and Industry are regulations, not legislation. Moreover, 3M argues that these regulations apply only to an employer-employee relationship and therefore are not relevant in this case.

We doubt that a negligence *per se* issue is presented here. We need not resolve that question, however, because in *Congini v. Portersville Valve Company*, 504 Pa. 157, 470 A.2d 515 (1983), the Pennsylvania Supreme Court decided that even when negligence *per se* was present, the plaintiff's contributory negligence was a defense. *McSparren v. Hanigan*, 225 F.Supp. 628 (E.D.Pa.1963), *aff'd*, 356 F.2d 983 (3d Cir.1966), on which plaintiff relies, is clearly distinguishable, and in any event

must be read in light of the more recent *Congini* case.

We are persuaded that the district judge properly submitted the issue of the plaintiff's contributory negligence to the jury. Indeed, a dispassionate review of the record shows that the jury was most lenient to plaintiff in assessing the comparative fault between him and 3M. On this record, if the percentages had been transposed, that result could be easily sustained.

## II

### 3M'S APPEAL

3M appealed the district court's denial of its motion for judgment n.o.v. or new trial. Defendant contends that the court erred in permitting the jury to consider the Pennsylvania Department of Labor regulations as evidence of the proper standard of care and in charging on Restatement (Second) of Torts § 392. 3M also asserts trial errors in the admission of testimony on the use of another's ladders, the practices of its safety supervisor, conversations of Haverstick-Borthwick's foreman with 3M employees, and preclusion of inquiry into taxes and present worth in the damage phase of the case.

The trial judge charged the jury that it must first decide if 3M owned the ladder. If so, then the next question would be:

"Did they [3M] supply it to plaintiff for use on this case? ... You might well conclude for example, that if ... it was in the immediate vicinity of where plaintiff was working and seemed to be available for use, that it was reasonably foreseeable to Minnesota Mining that somebody like plaintiff would use it for that or some similar purpose.... [O]r you [may] just draw the conclusion from your own evaluation that it was not reasonably careful of Minnesota Mining to ... have a ladder like this available in its plant to be used by a person in the position of the plaintiff."

Because this is a diversity case, we look to state law on negligence. The Pennsylvania courts have frequently cited and fol-

lowed the Restatement of Torts (Second), and the parties pressed it on the district court. Accordingly, we will use that source as a starting point.

Section 392 specifies that the allegedly defective chattel should be one that is to be used in the supplier's business.[1] A supplier becomes liable if he fails to exercise reasonable care to make the chattel safe or discover its dangerous condition. At trial 3M objected to the use of section 392, contending that plaintiff was not using the ladder for 3M's business purpose at the time of the accident. The trial judge expressed substantial doubt about 3M's contention and reasoned that "under the circumstances of this case it would [not] make any difference."

Also cited by the plaintiff's counsel was section 388 of the Restatement which fixes liability on a supplier if it fails to warn of a defect.[2] Section 389 imposes liability on a supplier if he knows that the chattel is unlikely to be made reasonably safe before being put to a use the supplier may expect and where the user is ignorant of the dangerous condition of the chattel.[3]

At the request of defense counsel, the court also charged "I leave this to you to evaluate ... [whether] Minnesota Mining may not have known of any defect in the ladder. It would be negligent on the part of Minnesota Mining to fail to correct a defect which they had knowledge of or as to which they are chargeable with notice or knowledge."

It may be seen from the charge excerpts, that the trial judge did not instruct the jury in the precise wording of sections 388, 389, or 392. In the circumstances of this case, however, his choice of language does not constitute reversible error. It is against the background of the specific facts in the case that the instruction must be evaluated.

The defect in question was the absence of safety feet on the ladder. Those devices are designed to prevent the foot of a ladder from slipping when in use. Plaintiff conceded that he did not notice any safety feet, and the jury properly found him guilty of negligence in using the ladder under these conditions without taking safety precautions.

The jury also found that 3M had been aware of the defect because a foreman for Haverstick-Borthwick had seen the same ladder in the area months before. He had used it twice himself but observing the lack of safety feet, took extra care in climbing the ladder. He also testified that several 3M employees were aware of the presence of the ladder and that he had seen other men using it.

In addition to plaintiff and the "fire watch" from Haverstick-Borthwick, there had been another 3M employee on the scene shortly before the accident who had them suspend work until the security guard arrived. The security guard for 3M was present when plaintiff ascended the ladder. The guard was just a few feet

---

1. § 392. Chattel Dangerous for Intended Use
   One who supplies to another, ... a chattel to be used for the supplier's business purposes is subject to liability
   (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
   (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

2. § 388. Chattel Known to be Dangerous for Intended Use
   One who supplies ... a chattel for another to use is subject to liability ... if the supplier
   (a) knows or has reason to know that the chattel is or is likely to be dangerous ... and

   (b) has no reason to believe that [plaintiff] ... will realize its dangerous condition, and
   (c) fails to exercise reasonable care to inform [plaintiff] of its dangerous condition.

3. § 389. Chattel Unlikely to be Made Safe for Use
   One who supplies ... a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability ... to those ... who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent.

away and there is no evidence that he did not observe its defective condition.

Thus, the jury could find that plaintiff climbed an unsafe ladder owned by 3M in the presence of its security guard who could have prevented its use. Against this factual background, the charge of the court did not constitute reversible error. In other circumstances, more precise adherence to the Restatement criteria might be required, *see Lambert v. Pittsburgh Bridge & Iron Works*, 227 Pa.Super. 50, 323 A.2d 107 (1974); *Labick v. Vicker*, 200 Pa.Super. 111, 186 A.2d 874 (1962), but the instruction here was not reversible. The trial judge merely adapted the Restatement factors to the evidence presented at the trial.

■ We likewise find no reversible error in the trial judge's comment to the jury that they might consider Pennsylvania's regulations on ladder safety, 34 Pa.Adm. Code § 21.51 (1984), as having some relevance to the issue of negligence. Although we have reservations about the jury instructions in this respect, in large measure, the regulations were merely cumulative of other evidence on the purpose of the safety feet.

■ Similarly, we are not persuaded that the admission of hearsay statements made by unidentified 3M employees to the Haverstick-Borthwick foreman constituted reversible error. The thrust of the statements was that 3M employees had used the ladder for maintenance work. However, the foreman testified that he had seen men using it. In addition, the uncontradicted testimony of 3M's security guard that he was present when plaintiff was using the ladder, makes it unlikely that the hearsay statements had any material effect on the outcome of the case.

■ Defendant also contends that the plaintiff's loss of earnings evidence should have been based on the net after taxes, rather than the gross figure. Because awards in personal injury cases are not considered taxable income, basing the award on gross income constitutes a windfall to the extent of the tax savings realized. There is strong economic justification for requiring that loss of earnings evidence should be based on after tax figures rather than unrealistic gross earnings. Nevertheless, since this is a diversity case, it is state law which controls and it is clearly contrary to the defendant's position. *See Vizzini v. Ford Motor Co.*, 569 F.2d 754, 763 (3d Cir.1977); *Gradel v. Inouye*, 491 Pa. 534, 546, 421 A.2d 674, 680 (1980); *Girard Trust Corn Exch. Bank v. Philadelphia Transp. Co.*, 410 Pa. 530, 538, 190 A.2d 293, 298 (1963).

We have reviewed the other contentions of 3M and find them insubstantial. We therefore conclude that adequate evidence supported the jury's verdict, and the district court did not commit reversible error either in its charge or in the admission of evidence.

### III

### THE INDEMNITY AGREEMENTS

Haverstick-Borthwick and Dresher have appealed the district court's interpretation of the indemnity clauses. They contend that 3M seeks indemnity only for that portion of the jury award for which it was solely liable—that which remained after the verdict was reduced by the plaintiff's contributory negligence. Therefore, they argue that as to that amount 3M was solely responsible and thus under the contract terms is not entitled to reimbursement. The contractors also contend that by making findings of negligence as to them, the trial court improperly mixed questions of contract and tort.

As noted earlier, 3M's third-party claims against Haverstick-Borthwick and Dresher were based on two theories—first, contribution or indemnity based on common law tort concepts; second, indemnification based on the contractual undertakings of the general and subcontractor. Although the tort contribution counts were withdrawn, the contractual indemnity claims were preserved for resolution by the court.

At this juncture, the parties and the court apparently considered the indemnification issues to be primarily, if not completely, matters of law. Unfortunately, the stipulation submitted to the court was not preserved in the record, and counsel do not agree on what was left for decision non-jury.

After the jury returned its verdict, the judge advised counsel that one of the remaining issues was the effect of the comparative negligence statute on the "sole negligence" of 3M. Another question was whether indemnification could be obtained in the absence of a showing that the third-party defendants were negligent for failing to inspect the ladder.

In its brief filed in the district court, Dresher said, "It is agreed to by the parties that the indemnification issues would be decided by the court as a matter of law. To the extent that factual issues arise, the parties agreed to have the court resolve them non-jury."

In a memorandum filed in the district court, 3M referred to the uncontested motion it filed before trial in which it and third-party defendants "agreed to permit the court to resolve all issues relevant to the adjudication of the indemnification claims." In that memorandum 3M stated that "Whether the third-party defendants on their own ... were negligent was an issue preserved in the case and allocated to the court."

Included in Haverstick-Borthwick's request for findings was the fact that its foreman had used the ladder on two occasions and recognized that it did not have safety feet. Haverstick-Borthwick also asked for a finding that "There has been no evidence that Haverstick-Borthwick was negligent in any manner."

In its requests, 3M cited contractual provisions in which Haverstick-Borthwick agreed to control and supervise the employees of subcontractors. 3M asked for a finding that both Haverstick-Borthwick's foreman and plaintiff's employer, Wegmann, were negligent and that Haverstick-Borthwick was vicariously liable for the plaintiff's negligence.

In his memorandum granting indemnity to 3M, the trial judge determined that 3M was not solely negligent because plaintiff as well as the contractors were also at fault.

■ Haverstick-Borthwick now argues that because 3M withdrew its contribution claims based on negligence, the trial judge could not make a finding on contractual indemnification in which the issue of negligence would be relevant. Dresher contends that the district court's findings were not predicated on any evidence in the record.

We reject the contention that the issue of negligence had not been preserved for resolution non-jury. The excerpt from Dresher's brief in the trial court and the request for findings of fact and conclusions of law by the parties convince us that negligence, insofar as relevant to the contractual provision, was to be decided by the trial judge.

No extended discussion is needed to distinguish the common law claims for contribution or indemnity based on negligence from the separate and distinct contractual obligations. Because the negligence of the third-party defendants may be relevant in both contexts, the withdrawal of common law contribution from the case did not eliminate the necessity for findings on negligence in the contractual phase. Much of the uncertainty on this point could have been eliminated had counsel made their stipulation a matter of record.

■ We come then to the ruling that 3M was not "solely negligent" so as to preclude indemnification and conclude that the district court correctly resolved the issue. In reaching our decision, we do not rely on the finding that plaintiff was negligent, nor on any negligence of Dresher, but rather we need look only at the conduct of Haverstick-Borthwick.

Haverstick-Borthwick's foreman permitted a ladder he knew to be defective to remain in the area where plaintiff was working. That in itself is sufficient to

support the finding of negligence because Haverstick-Borthwick had agreed to be responsible for apparatus used at the worksite and to enforce appropriate safety rules. The foreman's conduct, even absent such an agreement, might support a finding of negligence in these circumstances.

Having found that the exception did not apply, we must now consider the effect of the indemnification clauses. Although there has been some question about whether Minnesota law—as mentioned in the contract—or Pennsylvania law applies, there appears to be little material difference between the two. In any event, the parties acquiesced in the application of Pennsylvania law, and we will not change the rules of the game at this stage. *See, e.g., Zurzola v. General Motors Corp.*, 503 F.2d 403 (3d Cir.1974).

An early Pennsylvania case, *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907), held that a contract for indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee unless expressed in unequivocal terms. This rationale has been approved in a line of cases, *see, e.g., Brotherton Construction Co. v. Patterson-Emerston-Comstock, Inc.*, 406 Pa. 400, 178 A.2d 696 (1972); *Pittsburgh Steel Co. v. Patterson-Emerston-Comstock, Inc.*, 404 Pa. 53, 171 A.2d 185 (1961), and we followed those decisions in *Magill v. Westinghouse Electric Corp.*, 464 F.2d 294 (3d Cir.1972). In *Magill*, there were factual findings that the indemnitee was solely negligent; therefore, the indemnitee was not entitled to indemnification. *See also, Pennsylvania Manufacturers Assoc. Ins. Co. v. Lumbermens Mut. Ins. Co.*, 648 F.2d 914, 918 (3d Cir. 1981).

In other instances where the contractual provisions were somewhat different, Pennsylvania courts have permitted indemnification. *See, e.g., Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656

(1967); *Tidewater Field Warehouses v. Fred Whitaker Co.*, 370 Pa. 538, 88 A.2d 796 (1952). In those cases, indemnity clauses were enforced despite the fact that the indemnitee had been guilty of negligence. In *Murphy*, the court found no public policy against such clauses, even if they also covered negligence of the indemnitee. In *Jamison v. Ellwood Consolidated Water Co.*, 420 F.2d 787 (3d Cir.1970), we enforced a contract, which required indemnity even though the injury was caused "in whole or in part" by the indemnitee.[4]

We have no difficulty in concluding that the agreement between 3M and Haverstick-Borthwick falls under the *Jamison, Murphy*, and *Whitaker* line of cases. The contract provides that indemnification is due from "liability, loss, cost and expense ... incurred ... because of injuries ... whether or not based ... in part upon the active, passive, concurrent ... negligence of [3M]. This indemnity shall be liberally construed in favor of indemnification." Even without the agreement for liberal construction, the language does not come within the ban of *Perry v. Payne* because the agreement is clear and unequivocal.

Nor do the circumstances raise doubt about the intent of the parties. As the Pennsylvania Supreme Court observed in *Murphy*, claims of this nature are useful in construction contracts in allocating ultimate responsibility for injuries on the job. 425 Pa. at 173 n. 5, 228 A.2d at 660 n. 5. Court records reveal the plethora of suits by injured workmen against owners of premises. Those suits are brought in many instances as attempts to escape the limitations of workmen's compensation and are often encouraged by workmen's compensation carriers seeking subrogation recoveries. Exposure to such liability explains why owners seek to have contractors and subcontractors bear the risk of insuring against claims by their own workers.

**4.** In *Jamison*, Judge Seitz distinguished exculpatory clauses (which preclude recovery by the victim for negligence), *see, e.g., Keystone Aeronautics Corp. v. R.J. Enstrom Corp.*, 499 F.2d 146 (3d Cir.1974); *Employers Liability Insurance Co.* *v. Greenville Business Men's Assoc.*, 423 Pa. 288, 224 A.2d 620 (1966), and indemnity clauses which do not affect the victim's right of recovery. *Cf. Dilks v. Flohr Chevrolet, Inc.*, 411 Pa. 425, 435 n. 11, 192 A.2d 682, 687 n. 11 (1963).

Haverstick-Borthwick's claim against Dresher rests on the latter's agreement to be "bound by the terms of the aforesaid principal contract as far as applicable to this subcontract and to assume toward the general contractor all the obligations and responsibilities that the general contractor ... assumes toward the Owner [3M]."

In addition to this undertaking, Dresher agreed to carry liability insurance for personal injuries to employees or workers and for property damage resulting from neglect, fault, or default by a contractor or by virtue of the principal contract.

Dresher seems to argue that the undertaking is without rational limits. We disagree. Dresher's indemnity responsibility is limited and is effective only "as far as applicable to the subcontract." Plaintiff was working for a subcontractor whose undertaking was within the scope of Dresher's contract and, accordingly, within the applicable limits of its coverage. The insurance clause is evidence of the parties' intent to place the liability as close as possible to the party ultimately responsible for the injury. Dresher could have but did not require such an undertaking from Wegmann.[5]

We conclude, therefore, that the trial judge did not err in his rulings on the indemnification clauses. Nor was there reversible error in the conduct of the jury trial. Accordingly, the judgments of the district court will be affirmed.

---

[5]. Although Wegmann could not be joined as third-party defendant because its liability was limited by the Workmen's Compensation Act, 77 P.S. § 481 (Purdon Supp.1984), it could, however, have been joined if it had signed an indemnification agreement.