EASTERN AIRLINES, INC.

v.

INSURANCE COMPANY OF NORTH AMERICA, Appellant.

No. 84–3039.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1984.

Decided March 29, 1985.

Rehearing and Rehearing In Banc Denied April 23, 1985.

James L. Hymes, III (Argued), Charlotte Amalie, St. Thomas, V.I., for appellant.

R. Eric Moore (Argued), Diane Trace Warlick, Christiansted, St. Croix, V.I., for appellee.

Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

SLOVITER, Circuit Judge.

Eastern Airlines, Inc. and ABC Services, Inc. entered into a contract whereby ABC agreed to provide janitorial services for Eastern at its terminal and cargo facilities at the Harry S. Truman Airport in St. Thomas, U.S. Virgin Islands. The agree-

ment required that ABC indemnify Eastern and procure insurance for certain risks. It provided, in pertinent part:

3. Contractor [ABC] agrees to assume full responsibility for any and all liability *to its employees on account of injury*, disability and death resulting from, or *sustained by said employees in the performance of the services contemplated herein.* Contractor agrees to carry Workmen's Compensation and employer's liability insurance....

4. Contractor agrees and hereby undertakes to indemnify, defend and save harmless Eastern, its officers, employees, servants, representatives, and agents from and against any and all liability, damages, claims, suits or actions of every name and description (including any and all costs and expenses related thereto) brought against Eastern ... on account of any injuries to or death of any persons ... directly or indirectly arising out of or resulting from any acts, or omissions or operations on the Part of Contractor, its agents, servants or employees, *except however, injuries, deaths, damages, or losses arising solely from the negligent act of Eastern*, its agents or employees....

5. The Contractor agrees to provide, maintain and keep in effect at all times during the existence of this Agreement .... (3) appropriate Comprehensive Public/Automobile Disability Insurance including Contractual Liability and Products/Completed Liability Insurance with a minimum combined single limit of $1,000,000.00 covering injury or death of any person and damage or destruction of the property of any person, corporation, company, partnership, et al.

(emphasis added). Pursuant to this agreement, ABC entered into an insurance contract with Insurance Company of North America (INA) which included a "hold harmless clause" in favor of Eastern.[1]

While these contracts were in effect, Brenda Bedford, an employee of ABC working at the Truman Airport, injured her back while acting within the scope of her employment. Bedford sued Eastern, which tendered the defense of the action to ABC and its insurer, INA. INA repeatedly denied any obligation to defend the suit. The Bedford trial ended in a deadlocked jury. The case was retried. This time INA agreed to provide a defense, but reserved the right to challenge its obligation to pay any judgment awarded or costs of defending the suits. At the second trial the jury found Eastern was 80% negligent and Bedford 20% negligent, and it awarded Bedford $62,240.00 in compensatory damages.

INA continued to deny any obligation to pay Eastern under the indemnity agreement, leading Eastern to file this action for declaratory judgment against INA to determine the rights and obligations of the parties. Eastern sought reimbursement for the judgment it paid to Bedford as well as for all attorney's fees and costs it incurred in the course of the litigation. Both parties filed motions for summary judgment. The district court entered summary judgment for Eastern, granting all the relief it sought.

On appeal, INA argues first, that the indemnity provision does not require ABC to indemnify Eastern for Eastern's own negligence, and second, that even if such an obligation does exist, no indemnification is owed in the present case because of the "sole negligence" exception in the contract.

■ In support of its first contention, INA argues that because the agreement

---

1. That clause provided:

ABC Services, Inc., agrees to indemnify Eastern, against and hold it harmless from all loss, damage or liability resulting from claims, suits or causes of action for damage to property of, or injury to, any person or persons arising, or alleged to have arisen, from the operations under this contract by ABC Services, Inc., its sub-contractors, agents or employees, and ABC Services, Inc., agrees to pay all expenses of Eastern, including reasonable attorneys' fees in connection with the investigation of any such claims, suits, or causes of action and the defense thereof.

does not state that ABC's duty of indemnification includes protection against Eastern's own negligence, it should not be so construed. We have held, however, that an indemnity provision need not specifically refer to the indemnitee's negligence if the language is sufficiently broad and unambiguous. *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, 757 F.2d 1427 (3d Cir.1985) (hereafter *Beloit I*). *See also First Jersey National Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 339–40 (3d Cir.1983) (New Jersey law); *Draper v. Airco, Inc.*, 580 F.2d 91, 101 (3d Cir.1978) (Pennsylvania law).

ABC undertook to indemnify and defend Eastern "from and against *any and all liability*, damages, claims, suits or actions ... brought against Eastern ... on account of any injuries to ... any persons ... arising out of or resulting from any acts, or omissions or operations on the Part of Contractor, its agents, servants or employees," an undertaking that patently covers a claim such as Bedford's. This supplemented ABC's undertaking to assume full responsibility for any and all liability to its employees for injuries sustained by them in performing the services contemplated by the contract. Moreover, the provisions requiring ABC to secure insurance "manifest an intent to shift the risk." *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, 757 F.2d 1431 (3d Cir.1985) (hereafter *Beloit II*). *See also Willey v. Minnesota Mining & Manufacturing Co.*, 755 F.2d 315, 323 (3d Cir.1985). Thus, we agree with the district court that there is nothing ambiguous about the contractual language.

■ We turn then to INA's second argument, which goes to the meaning of the "sole negligence" exception. INA argues that since Bedford's recovery was reduced by twenty percent, the amount the jury found she contributed to her own injuries, the damages that Eastern had to pay were attributable solely to Eastern's negligence, which had been assessed at eighty percent.

INA's argument might be more persuasive if the language of the indemnity provision were limited to "damages paid". It is not. ABC agreed not only to indemnify Eastern for all "liability" and "damages", but also to hold Eastern harmless from all "claims, suits or actions" brought against Eastern "on account of any injuries ... except ... injuries ... arising solely from the negligence of Eastern." Bedford's "claim" or "suit" was on account of injuries she suffered that did not "aris[e] solely from the negligent act of Eastern", since they arose partially from her own negligent act. Thus, INA's argument is contrary to the clear contractual language.

The widespread use of "sole negligence" provisions may be explained in part by the reluctance of many courts to enforce an all-inclusive indemnity provision. Instead, they read such language as if there were an additional provision whereby injuries caused by the sole negligence of the indemnitee were excepted from the scope of the indemnity provision. *See* Annot., 175 A.L.R. 8, 32 (1948). Even now, in some jurisdictions, "[a] provision which guarantees indemnification for the sole negligence of the indemnitee is void as against public policy." *Harbenski v. Upper Peninsula Power Co.*, 118 Mich.App. 440, 325 N.W.2d 785, 791 (1982) (citations omitted). *See also Chicago & North Western Transportation Co. v. V & R Sawmill, Inc.*, 501 F.Supp. 278 (D.S.D.1980) (applying South Dakota statute rendering agreement to indemnify for the sole negligence of indemnitee void and unenforceable). Thus, sole negligence provisions may have evolved because of a belief that they were judicially required or would preserve an otherwise invalid broad indemnity provision. Moreover, by imposing on the indemnitee the obligation to bear the cost when its own negligence was the only cause of the injury, a sole negligence clause reflects the concern about fairness which underlay some of the judicial decisions. This may also account for what appears, at least

from the reported cases, to be its present widespread use.[2]

On the other hand, this court has already concluded that there is no public policy that prevents judicial enforcement of the parties' agreement to shift the cost of or liability for the consequences of one's own negligence, provided it is done clearly and unambiguously. *Beloit I*, 757 F.2d at 1430 (permitting indemnification for the indemnitee's own negligence). *See also United States v. Seckinger*, 397 U.S. 203, 211 (1970). We do not share the aversion of some courts to contractual efforts to shift the perceived risks among the parties to a business transaction.

As we recently explained in *Willey v. Minnesota Mining & Manufacturing Co.*, 755 F.2d 315, 323 (3d Cir.1985), there are a plethora of suits by injured workers against owners of premises. "Those suits are brought in many instances as attempts to escape the limitations of workmen's compensation and are often encouraged by workmen's compensation carriers seeking subrogation recoveries. Exposure to such liability explains why owners seek to have contractors and subcontractors bear the risk of insuring against claims by their own workers." *Id.* at 323. If we were to adopt INA's position and disregard the employee's own negligence in applying the sole negligence exception, the exception would preclude use of the indemnity provision in one of the primary circumstances for which indemnity was intended.

We have recently rejected the claim that a "sole negligence" clause must be construed by looking only at the negligence of the indemnitee vis-a-vis the indemnitor. *Beloit II*, 757 F.2d at 1434. We held that "if a third party also bears some of the responsibility for the injury, the 'sole negligence' provision is inapplicable." *Id.* In fact, in that case, the indemnitor was not itself negligent, but we held that was irrel-

evant for purposes of enforcing the obligation it had undertaken.

Whatever the reason for Eastern's willingness to bear the liability when it was solely negligent, it is apparent that it was not willing to do so if someone else was also responsible. The language of the indemnity contract at issue here explicitly contemplates the possibility that ABC's employees may be injured, and also that their acts may cause injury. ABC's agreement to indemnify Eastern specifically covers Eastern's liability arising out of or resulting from any acts of ABC's employees. Bedford's negligence clearly meets this description, and we see nothing in the language of the "sole negligence" clause that requires a different result simply because her negligence caused injury only to her.

If another ABC employee had been 20% responsible for Bedford's injuries, it seems clear that the "sole negligence" proviso would not apply and Eastern would be indemnified by ABC's insurer. INA has provided no plausible reason why it would matter to the parties whether the other negligence was that of a third party or an ABC employee who was also the injured party.

Nor do the cases considering this fact pattern provide any plausible reason. Courts have reached contrary results without expressly analyzing the underlying policy as applied to the particular contract language. *Compare Paquin v. Harnischfeger Corp.*, 113 Mich.App. 43, 317 N.W.2d 279, 284 (1982) (requiring indemnification) *with Binswanger Glass Co. v. Beers Construction Co.*, 141 Ga.App. 715, 234 S.E.2d 363, 366 (1977) (not requiring indemnification). *See also Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 536–37 (11th Cir.1983) (applying the *Binswanger* rule).

---

**2.** *See* A. Dib, 1 Forms and Agreements for Architects, Engineers and Contractors § 45 (1984), which distinguishes limited, intermediate and broad indemnity clauses. The "sole negligence" proviso is a feature of the intermediate form. Some indemnity provisions provide for indemnity even in the case of the indemnitee's sole negligence, and are enforced. *See, e.g., Cozzi v. Owens Corning Fiber Glass Corp.*, 63 N.J.Super. 117, 119, 164 A.2d 69, 70 (1960) (clause indemnifying for liability "whether occasioned by said Contractor or his employees or by Owner or his employees").

Only *Drewery v. Daspit Brothers Marine Divers, Inc.*, 317 F.2d 425 (5th Cir. 1963), attempts to explain why it held, in similar circumstances, that the indemnification provision was inapplicable because the only other party negligent was the indemnitor's injured employee. The court reasoned that since the "tort [of negligence] rests on the breach of a legal duty owed another," negligence causing injury to one's self is not a tort. *Id.* at 428. The court concluded, therefore, "that the master cannot be held unless the court is to extend the doctrine of imputed negligence to a new area, and to a point it has never reached." *Id.*

We reject the *Drewery* court's analysis for two reasons. First, it is "negligence" which is the issue, not whether the conduct is labeled a "tort". Indeed, the Fifth Circuit itself has stated that *Drewery* "has ... been limited to its particular facts...." *See Nutt v. Loomis Hydraulic Testing Co.*, 552 F.2d 1126, 1130 (5th Cir.1977). Second, in *Drewery*, the comparable "sole negligence" provision excepted only circumstances when the indemnitor was "without negligence or fault". 317 F.2d at 426. Thus, it was crucial whether contributory negligence of the indemnitor's employees could be imputed to it. The basis for ABC's responsibility in this case is not imputed negligence, the theory of respondeat superior, but instead a specific contractual obligation. Therefore, we need not determine whether Bedford's negligence will be imputed to ABC; ABC agreed to be responsible to Eastern for what she did.

In conclusion, INA's contention in this case that the "sole negligence" exception applies to relieve ABC of its undertaking to indemnify Eastern tortures the language of the contract and would have us reach a result that the parties cannot reasonably have intended. Therefore, we will affirm the judgment of the district court.

GIBBONS, Circuit Judge, dissenting:

I would construe the "sole negligence" provision of the indemnity agreement to mean that Eastern is not entitled to indemnification when its liability for damages is solely attributable to its own negligence. Since the indemnification undertaking deals with liability, the language of the "sole negligence" exception cannot reasonably be divorced from liability-causing conduct. The exception to the indemnity undertaking for the indemnitee's sole negligence should be construed to mean that the indemnitor is liable in every instance in which some party other than the indemnitee has engaged in conduct resulting in the indemnitee's liability to a claimant. Contributory negligence is not conduct resulting in liability to the claimant because the claimant's award is reduced in proportion to his or her own negligence. The only party which engaged in conduct resulting in liability to a claimant is Eastern Airlines. Thus the sole negligence exception to the indemnity undertaking should apply. Construing the contract language as the majority does wrenches it from its context.

Compensated risk takers generally should be required to fulfill their indemnification obligations, and thus should have the insurance policies which they draft construed in favor of the insured. Those salutary rules are not involved here. Eastern Airlines contracted at arm's length with ABC Services. Insurance Company of North America undertook to indemnify Eastern only to the extent that Eastern and ABC contracted for indemnification. As a stranger to the Eastern Airlines—ABC contract, it is entitled to have the language construed against Eastern, which drafted it. Such a rule of construction would, it appears to me, require that the sole negligence language be restricted to liability-causing conduct. That being so, I would reverse and remand for the entry of judgment in favor of Insurance Company of North America.