Robert J. **BAINVILLE**

v.

**HESS OIL V.I. CORP.**

v.

**STANDBY POWER SUPPLIES, INC.,
Third Party Defendant, Appellant.**

Nos. 87–3062, 87–3161.

United States Court of Appeals,
Third Circuit.

Argued Dec. 7, 1987.

Decided Jan. 15, 1988.

---

Diane Trace Warlick, R. Eric Moore (argued), Law Offices of R. Eric Moore, Christiansted, St. Croix, U.S.V.I., for third party defendant, appellant, Standby Power Supplies, Inc.

Law Offices of Britain H. Bryant and Associates, P.C., Nancy V. Young (argued), St. Croix, U.S.V.I., for appellee, Hess Oil Virgin Islands Corp.

Before GIBBONS, Chief Judge, and STAPLETON and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Standby Power Supplies, Inc. (Standby) appeals from summary judgment in a third party indemnity action, enforcing its contractual duty to indemnify Hess Oil Virgin Islands Corporation (Hess), and from a supplemental judgment awarding attorney's fees to Hess. Since we review a summary judgment our review is plenary, 649 F.Supp. 804.

At issue is an indemnity clause contained in a contract for manpower between a company "contracting-out" for labor and services (here, Hess) and a general contractor/labor supplier (here, Standby). We read the contract to express the intent that the duty to indemnify extends to stipulated judgments. We further conclude that the duty to pay attorney's fees follows the duty to indemnify. Therefore, we will affirm the summary judgment, enforcing Standby's duty to indemnify, and the supplemental judgment awarding Hess attorney's fees.

### I.

#### The Facts

In 1981, Hess and Standby entered into a contract whereby Standby agreed to provide millwright manpower to Hess at its oil refinery on St. Croix. The parties expressed their agreement in a standard form contract drafted by Hess which contained the following clause requiring Standby to:

> indemnify, exonerate, and hold harmless [Hess] against loss, damage, liability or expense by reason of any suits, claims, demands, judgments or causes of action for personal injury (including death) or property damage (including property of the parties) arising out of or in any way in consequence of the performance hereunder by [Standby] except that in no instance shall [Standby] be held responsible for any liability, claim, demand or cause of action attributable solely to the negligence of [Hess].

The contract further required Standby to procure worker's compensation insurance and insurance for certain risks.

In 1982 Robert Bainville, one of the millwrights hired by Standby and provided by Standby to work at Hess's plant pursuant to the agreement, was injured on the job. Bainville subsequently filed a personal injury suit against Hess for failure to provide proper supervision and failure to warn. Bainville brought the suit against Hess on the assumption that Hess did not assume the status of Bainville's employer but rather stood in relation to Bainville as the owner of the premises and, therefore, was not protected from liability to suit in negligence by the Worker's Compensation Act.

Upon notice of the personal injury action against it, Hess tendered the defense to Standby, relying on their hold harmless-indemnity agreement. Standby refused to accept the tender of defense, although it did proceed to assist in Hess's preparation of its own defense. Following Standby's refusal to take over the defense, Hess filed a third-party indemnity action against Standby on the theory of an express contractual duty to indemnify. The third-party indemnity action was severed prior to the trial of the primary lawsuit. Before and during the course of the trial, counsel for Bainville and Hess maintained settlement negotiations, during which Bainville made settlement demands, first for $300,000, then for $200,000. Hess offered Standby the opportunity to approve the lower demand for $200,000, but Standby stated that it refused to contribute more than $25,000 to a settlement. Subsequent to Standby's refusal, during jury deliberations, Hess reached a conditional settlement with Bainville for $175,000—payment of that amount being conditioned on allowing the jury to reach a verdict on the allocation of negligence for the sole purpose, approved by the district court, of determining whether or not the sole negligence exception to the duty to indemnify would apply in the context of the third-party indemnity action. The jury returned its verdict finding that Bainville was 50 percent negligent and that Hess was 50 percent negligent, and that Bainville was the borrowed employee of Hess.

## II.

### *The Intent of the Contract Was to Indemnify Against Judgments Stipulated by Settlement*

■ Hess's claim is based on an express contractual duty to indemnify. Such contractual indemnity clauses are typically drafted to cover the circumstances created by agreements between the companies which contract out jobs and general contractors which perform them, under which workers can bring personal injury actions against the contracting-out company that they could not bring against their employer, the labor contractor, under the Worker's Compensation Act. Through contractual indemnity provisions, the labor contractor undertakes to indemnify the company for such personal injury liability that escapes the limitations of worker's compensation (insurance for which it also typically provides) by virtue of its agreement. As such, the duty's scope, in particular its applicability to stipulated judgments, is determined by the parties' mutual intent, expressed in the contract, rather than by general principles of equity. *See Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 304 (5th Cir.1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974); *Whisenant v. Brewster–Bartle Offshore Co.*, 446 F.2d 394, 401–02 (5th Cir.1971); *Tankrederiet Gefion A/S v. Hyman–Michaels Co.*, 406 F.2d 1039, 1043 (6th Cir.1969) (all stating that equitable considerations governing the applicability of a duty to indemnify where actual liability has not been proven do not apply to a duty to indemnify founded on a written contract). It is well-settled that parties can allocate the financial responsibility for the consequences of negligence as they see fit. *See United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970); *Eastern Airlines v. Insurance Company of North America*, 758 F.2d 132 (3d Cir.1985); *Beloit Power Systems, Inc. v. Hess Oil V.I. Corp.*, 757 F.2d 1427 (3d Cir.1985). This capacity to shift financial responsibility by contract naturally includes the capacity to contractually allocate financial responsibility for stipulated judgments where cases

are settled without the benefit of an adjudication of actual liability. Thus, in *contract* indemnity cases, as distinguished from cases where liability arises as a matter of law, the question of whether actual liability is a prerequisite to the duty to indemnify is answered by reference to what the parties, by virtue of their contractual capacity, intended, as reflected in the language of the indemnity clause. *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed. 2d 224 (1970).

This method of determining if the duty encompasses payments based on potential, as opposed to only actual, liability, contractual interpretation, is entirely different from the approach propounded by Chief Judge Seitz in *Frederick v. Hess Oil V.I. Corp.,* 642 F.2d 53, 56 (3d Cir.1981) (Seitz, C.J., dissenting). In Chief Judge Seitz's approach an actual liability requirement is assumed to be the general rule, from which a "potential liability exception" is made on the basis of weighing the policy interests in encouraging settlements (where ordinarily an actual liability requirement cannot be met) against considerations of fairness to the putative indemnitor. *Id.* Other courts have further elaborated the circumstances in which such a potential liability exception should apply, specifically, when the indemnitor has had the opportunity either to take over the defense of the original action or approve the terms of the settlement, *see, e.g., Burlington Northern, Inc. v. Hughes Bros., Inc.,* 671 F.2d 279 (8th Cir.1982); *Missouri Pac. R.R. Co. v. International Paper Co.,* 618 F.2d 492, 497 (8th Cir.1980); *Central Nat'l Ins. Co. v. Devonshire Coverage Co.,* 565 F.2d 490, 495–96 (8th Cir. 1977); *Parfait v. Jahncke Service, Inc.,* 484 F.2d 296 (5th Cir.1973), *cert. denied,* 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974); *Whisenant v. Brewster–Bartle Offshore Co.,* 446 F.2d 394 (5th Cir.1971); *Missouri Pac. R.R. Co. v. Arkansas Oak Flooring Co.,* 434 F.2d 575, 580 (8th Cir. 1970); *Tankrederiet Gefion A/S v. Hyman–Michaels Company,* 406 F.2d 1039 (6th Cir.1969); *Hess Oil V.I. Corp. v. Firemen's Fund Ins. Co.,* 626 F.Supp. 882 (D.V.I.1986); *Dominic v. Hess Oil V.I. Corp.,* 624 F.Supp. 117 (D.V.I.1985); *Terra*

*Resources, Inc. v. Lake Charles Dredging and Towing, Inc.,* 555 F.Supp. 406 (W.La. 1981), *aff'd,* 695 F.2d 828 (5th Cir.1983), or, more broadly, when the indemnitor has been substantially protected against the awkward possibility of having to prove the original plaintiff's case against himself, *Burke v. Ripp,* 619 F.2d 354 (1980). This court, while not having committed itself, has signaled some inclination toward adopting this balancing-of-the-equities formula as a guide to when to recognize exceptions to the general rule of an actual liability requirement. *See Frederick* at 56 (Seitz, C.J., dissenting), and *M & O Marine, Inc. v. Marquette Co.,* 730 F.2d 133 (3d Cir. 1984).

It must be emphasized, however, that the balancing-the-equities approach applies only to cases where the duty to indemnify arises as a matter of law. Balancing the interest in promoting settlements against considerations of fairness to the indemnitor is simply irrelevant to the determination of whether a *contractual* duty to indemnify requires a demonstration of actual liability as a precondition or whether, alternatively, an assertion of potential liability is sufficient to trigger the duty. That determination, according to elementary principles of contract law, is clearly a matter of the intent of the parties.

■ We have no trouble concluding that here the intent of the parties was not to require a determination of actual liability as a precondition of the duty to indemnify. The indemnity agreement applies to "any suits, claims, demands, judgments or causes of action for personal injury." There is no question that Hess was faced with a demand from the original plaintiff. This reading of contractual intent is supported by our holding in *Frederick* that substantially similar contract language, indemnifying against "all demands, loss or liability for or on account of any injury," was intended to apply to stipulated judgments. *Frederick,* 642 F.2d at 55.

■ Standby attempts to deny that the demand on Hess made by the plaintiff was of the sort contemplated by the agreement

to require indemnification on the basis of three arguments. First, Standby argues that the judgment stipulated in response to the demand was not binding on the parties; in other words, that there was no authentic stipulated judgment and that, therefore, the jury verdict of no liability is controlling. We follow the district court in rejecting Standby's argument that the payment was a mere gratuity, finding that the settlement was effective and binding prior to the jury verdict on the basis of specific evidence, to wit, a letter from Hess's counsel to the plaintiff's counsel, dated two days prior to the jury verdict, stating that, "we will pay you $175,000.00 as a gross trial settlement." We are unpersuaded by Standby's efforts to dispute this characterization of the letter as expressing a binding settlement on the basis of further language in the same letter to the effect that "[t]he matter will not be deemed settled or concluded until after a jury returns a verdict on liability, which is a condition precedent to any settlement at this figure." A settlement is a promise, and to state that the transaction is not yet deemed to be concluded in no way diminishes the binding force of the promise to do so. Furthermore, the inclusion of a condition precedent in the terms of an agreement in no way invalidates it *qua* binding agreement. The parties made a jury verdict a condition precedent as part of their agreement, and this they did for the sole purpose of facilitating the resolution of this third-party action, with the approval of the trial judge. That this was their sole purpose clearly implies the intent that the verdict should have no bearing on the original action. Hence, by the intent of the parties, the substance of the verdict on liability is entirely irrelevant to the effectiveness and authenticity of the stipulated judgment settlement. We conclude, therefore, that Hess's payment to Bainville was pursuant to a binding settlement and not a mere gratuity.

Given that the settlement between Hess and Bainville is *bona fide*, Standby further argues that settlements are not covered by the contractual duty to indemnify. While purporting to hew to the meaning of the contract, Standby relies for support almost exclusively on the equitable considerations which, as we explained above, are not pertinent to determining the scope of a contractual indemnification duty. *See Parfait*, 484 F.2d at 304; *Tankrederiet*, 406 F.2d at 1043. Thus, Standby's protestations that it had no opportunity to approve the final settlement, that it had no duty to defend the original action and, therefore, that its failure to approve or defend should not warrant recognizing the potential liability exception, are quite simply out of place. The refusal of a tender of defense is a circumstance factored into the equitable approach to determining the scope of a duty to indemnify as a matter of law. Hence, treating potential liability as an "exception" to the "general rule" of actual liability is inapposite to discerning contractual intent; as parties are free to shift liability as they will, there are no *a priori* general rules and exceptions. Relying on such *a priori* equitable principles, Standby thus ignores the intent of the parties as expressed in the contract, and fails to convince us that the contract requires actual liability. The language of the contract is not limited to cases in which the indemnitee is found liable to the injured person, and we see no reason to imply such a limit. *See Frederick*, 642 F.2d at 55.

Standby's final argument against enforcing the duty to indemnify invokes the sole negligence exception of the indemnity clause. By the terms of the contract, "in no instance shall [Standby] be held responsible for any liability, claim, demand or cause of action attributable solely to the negligence of [Hess]." The jury found that Hess was 50 percent negligent, that Bainville was 50 percent negligent, and that Bainville was the borrowed employee of Hess. Standby argues that, by the operation of the borrowed servant doctrine, Bainville's negligence is imputed to Hess and that therefore Hess is 100 percent, i.e., solely, negligent. Consequently, Standby further argues, the sole negligence exception to the duty to indemnify should apply.

This line of argument raises two questions, both of which require reference to the intent of the contract. The first ques-

tion is whether the jury verdict is determinative of the sole negligence issue. The threshold inquiry is whether the contract contemplates that the sole negligence issue, like the liability issue, is subject to either judicial or non-judicial determination or, alternatively, whether it requires a judicial determination of the sole negligence issue. Judges Mansmann and Stapleton favor reading the sole negligence clause of the contract to require a judicial determination and, hence, excluding a determination of the sole negligence issue by settlement. They support this view on the ground that to permit a settlement agreement between Hess and the tort plaintiff to control the sole negligence issue would enable Hess to extract an agreement that it was not solely negligent in virtually every case because the tort plaintiff has no interest in opposing such an agreement. To thus render the sole negligence clause virtually meaningless in a settlement context, Judges Mansmann and Stapleton suggest, could not reasonably have been the intent of the contracting parties.

By contrast, Judge Gibbons favors reading the sole negligence clause and the remaining clauses of the indemnity agreement together to permit any of the issues upon which the duty to indemnify depends—including sole negligence as well as liability to the tort plaintiff—to be subject to either judicial or non-judicial determination. This reading of the contract is supported on the ground that to require judicial determination of the sole negligence issue is to create a huge incentive on the part of the potential indemnitor to pursue a court adjudication—a result that is in tension with our reading of the rest of the contract to embrace stipulated judgments. To so discourage settlements by requiring judicial determination of the sole negligence issue cannot, in Judge Gibbons' view, reasonably have been the intent of the contracting parties.

This is a close question of contractual interpretation, but one which we need not finally resolve here because it is clear from the facts of this case that even if the contract did give the parties the option of subjecting the sole negligence issue to non-judicial determination, that is an option that they did not exercise. The record is clear that Hess and Bainville pursued a jury verdict for the purpose of determining the sole negligence issue. The indemnitor, Standby, could have participated in the litigation of that issue, but declined to do so. Like any indemnitor to whom defense of the action is tendered, but who declines to participate, Standby is bound by the outcome. Therefore, the jury verdict is controlling of the sole negligence issue in this case, and the dispositive question is what the meaning of the jury verdict, with respect to the applicability of the sole negligence exception, is.

The jury found that Bainville and Hess were each 50 percent negligent, and that Bainville was the borrowed employee of Hess. The question is whether or not the jury finding that Bainville was Hess's borrowed employee operates to attribute Bainville's negligence to Hess, thereby attributing 100 percent of the negligence to Hess and triggering the sole negligence exception. This question of the effect of Bainville's borrowed servant status on the sole negligence issue, unlike the question of whether or not Bainville is a borrowed servant, is a matter of the contractual intent of the indemnity agreement because the parties are entitled to allocate between themselves the risk of loss resulting from the employee's contributory negligence, regardless of the employee's status under the borrowed servant doctrine. *See Krzywicki v. Tidewater Equipment Co.,* 600 F.Supp. 629, 639 (D.Md.1985); *Sea Land Industries, Inc. v. General Ship Repair Corp.,* 530 F.Supp. 550, 563 (D.Md.1982); *Elston v. Shell Oil Co.,* 376 F.Supp. 968, 972 (E.D. La.1973); *accord Warren Petroleum Corp. v. J.W. Green Contractors,* 417 F.2d 242, 245 (5th Cir.1969) (stating that indemnitor's liability under an indemnification contract does not necessarily turn on the characterization of the tort plaintiff's employment status under the borrowed servant doctrine). Therefore, the question is whether or not the contract expresses the intent to shift the responsibility for a borrowed employee's negligence to the bor-

rowing employer for purposes of the sole negligence exception. We conclude that the indemnification contract is properly read as *not* contemplating that the borrowed servant doctrine have such an effect on the sole negligence exception. The basic rationale for our conclusion that the contract does not contemplate attributing the negligence of a borrowed employee to a borrowing employer for the purpose of triggering the sole negligence exception is that the contrary reading "would preclude use of the indemnity provision in one of the primary circumstances for which indemnity was intended." *Eastern Airlines, Inc. v. Insurance Co. of North America*, 758 F.2d 132, 135 (3d Cir.1985). Although *Eastern Airlines* did not involve the specific question of the effect of the borrowed servant doctrine on the sole negligence exception to the duty to indemnify, this court had occasion there to observe that it would be inconsistent with the contractual intent to "disregard" or fail to attribute to the employee his or her contributory negligence in applying the sole negligence exception where the indemnity contract was intended to cover situations in which the employees' own negligence contributed to their injuries.

*Eastern Airlines* held that the contract was intended to indemnify against injuries partially caused by the employee's contributory negligence on the basis of the language of the contract. Similarly, the language of the contract between Hess and Standby warrants a finding that it was intended to cover situations where the employees' own negligent acts contributed to their injuries. The language of the contract which we concluded in *Eastern Airlines* "explicitly contemplates" and "specifically covers" indemnification against "liability arising out of or resulting from any acts of [the contractor's] employees" consisted of the following statement:

> Contractor [ABC] agrees to assume full responsibility for any and all liability to its employees on account of injury, disability or death *resulting from* or sustained by *said employees in the performance of the services contemplated herein.*

*Id.* at 133 (emphasis added). Likewise, the language in the Hess–Standby contract, indemnifying against liability *"arising out of or in any way in consequence of the performance hereunder by [Standby] ...,"* (emphasis added), while not referring specifically to the employees, encompasses liability resulting from the employees' acts because Standby's performance under the contract, which is explicitly covered, consists precisely in the supply of their labor. Hence, we conclude that it would be unreasonable to read the sole negligence exception to apply, by virtue of the operation of the borrowed servant doctrine, in the large percentage of cases in which the only negligent parties are the tort plaintiff and Hess, when the contract clearly provides for indemnification in cases in which the tort plaintiff was contributorily negligent.[1]

---

**1.** An alternate approach to discerning contractual intent with regard to the effect of the borrowed servant doctrine on sole negligence is represented by several cases *e.g., Warren Petroleum Corp. v. J.W. Green Contractors,* 417 F.2d 242, 244 (5th Cir.1969); *Sea Land Industries, Inc. v. General Ship Repair Corp.,* 530 F.Supp. 550 (D.M.1982); and *Elston v. Shell Oil Co.,* 376 F.Supp. 968 (E.D.La.1973), which base their conclusions that the indemnity contracts at issue evince the intent not to attribute the borrowed employee's contributory negligence to the borrowing employer on the following various grounds: (1) the supplier assumed the responsibility for carrying liability insurance, *see Warren Petroleum,* 417 F.2d at 244; *Krzywicki v. Tidewater Equipment Co., Inc.,* 600 F.Supp. 629, 639 (D.M.1985); *accord Sea Land,* 530 F.Supp. at 563 (inferring from the compensation arrangements that the parties must have contemplated that the supplier would assume the responsibility for liability insurance, and considering this as an indication that the parties intended the supplier to bear the risk of loss); (2) the supplier warranted the workmanship and diligence of the employees supplied, *see Elston,* 376 F.Supp. at 972; (3) the supplier maintained the position of an independent contractor and the work was performed in its name, *see, e.g., Elston,* 376 F.Supp. at 972; *Warren Petroleum,* 417 F.2d at 345 (the fact that the employee's services were provided "on a contract basis, 'working through' a compensated independent supplier or broker of labor" considered as tending to suggest that liability for indemnification is not intended to depend on borrowed servant status); *Sea Land,* 530 F.Supp. at 563 (stating that it is "significant" in determining the intent of the parties as to who should bear the risk of

Standby's arguments against awarding Hess attorney's fees are based on the same theories—that the stipulated judgment fell outside the indemnity agreement, or within the sole negligence exception—that we rejected above. Therefore, we will also affirm the supplemental judgment.

loss due to contributory negligence that the employee was "not 'borrowed' but was in fact 'rented' "); (4) the supplier undertook to furnish the necessary labor and supervision, *see Elston*, 376 F.Supp. at 972. In this case, these factors are either disputed or not asserted. However, we need not address them since we base our reading of contractual intent on different grounds.