Ronald L. HILLARD, Individually, Thomas J. McGrath, Jr., Individually, and Devices For Life, Inc., Plaintiffs,

v.

GUIDANT CORPORATION, Sulzer Intermedics, Inc. and Sulzer Medica USA, Inc., Defendants.

No. 98–CV–2077.

United States District Court, M.D. Pennsylvania.

March 5, 1999.

Harvey Freedenberg, McNees, Wallace & Nurick, Harrisburg, PA, Donald Brower Kaufman, McNees, Wallace & Nurick, Harrisburg, PA, Matthew B. Royer, McNees, Wallace & Nurick, Harrisburg, PA, for Ronald L. Hillard, Devices for Life, Inc.

Donna A. Walsh, Scranton, PA, Daniel Thomas Brier, Myers Brier & Kelly, Scranton, PA, Lori R. Bramley, Myers, Brier & Kelly, LLP, Scranton, PA, for Thomas J. McGrath, Jr.

Dino Antonio Ross, Reed, Smith, Shaw and McClay, Harrisburg, PA, Edward L. Friedman, Houston, TX, for Guidant Corporation.

Andrew Hailstone, Scranton, PA, Lawrence B Schreve, Andrews & Kurth LLP, Houston, TX, for Sulzer Medica USA, Inc.

## MEMORANDUM

MUNLEY, District Judge.

Before the court is the plaintiff's motion for a Preliminary Injunction pursuant to Rule 65 of the F.R.C.P. Plaintiffs Hillard and McGrath are doing business together under the name Devices For Life, Inc. ("DFL"). Plaintiffs ask the court to enjoin defendants from breaking their contractual obligation under a Sales Representative Agreement (hereafter "Agreement" or "Contract") which plaintiffs entered into with Intermedics, Inc. on April 1, 1996. Under the terms of that agreement plaintiffs would be the exclusive sales representatives for a defined territory with responsibility for selling products[1] manufactured and/or distributed by Intermedics, Inc. Ad-ditionally, Intermedics, Inc. was to use its "best efforts" to supply products to enable plaintiffs to meet their sales quotas.

The record reveals that on February 1, 1999, Defendant Guidant acquired the cardiac rhythm management business of Sulzer Medica, including the stock of Intermedics. Prior to the acquisition, Sulzer Medica, had been the sole shareholder of Intermedics, Inc. Following the acquisition, Guidant became the sole shareholder of Intermedics, Inc.

Plaintiffs theorize that defendant Guidant so dominates the operations and activities of Intermedics that it should be held to be its alter ego with shared responsibility for filling its contractual obligations and or its continuing acceptance of the benefits of the agreement imposes on Guidant the corresponding obligation to satisfy related liabilities under the doctrine of equitable assignment.

Defendant Guidant's position is that plaintiffs continue to receive the same mix of Intermedics' products (pacemakers and implantable defibrillators) at least through the end of the year 1999 and into the year 2000 as they received prior to the acquisition of Intermedics by Guidant on February 1, 1999; and Hillard and McGrath presently receive $30,000 a month in temporary financial assistance, all pursuant to the provisions of the contract.

Following a close examination of the proffered evidence, together with the argument and briefs filed by able counsel we find that the motion for a Preliminary Injunction must be granted.

### I.  Jurisdiction

We have jurisdiction in this case pursuant to 28 U.S.C. § 1332; diversity of citizenship exists and the amount in controversy exceeds $75,000.00.

---

1. "Product" is defined in Section 1.9 of the Agreement as cardiac pulse generators (including pacemakers and implantable defibril-lators) and related leads manufactured and/or distributed by Intermedics during the term of this Agreement.

## II. Standard of Review

■ The law provides that for a preliminary injunction to be properly granted the moving party must establish the following elements: (1) a reasonable probability of success on the merits; (2) irreparable injury will be sustained by the moving party if the preliminary injunction is not granted; (3) granting the injunction will not result in irreparable harm to the non-moving party; and (4) granting of the injunction would be in the public interest. *Nutrasweet Co. v. Vit–Mar*, No. 98–5027, 1999 WL 93584 (3d Cir.1999).

■ These factors merely "structure the inquiry" and no one element will necessarily determine the outcome. The court must engage in a delicate balancing of all the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits. *Constructors Association of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978).

## III. Discussion including Findings of Fact and Conclusions of Law

### A. Likelihood of Success on the Merits

Plaintiffs claim that Guidant plans to keep the latest technology from them and this scheme violates the Sales Representative Agreement. Guidant claims it is not bound by the agreement, and regardless the agreement does not provide that Intermedics supply plaintiffs with state-of-the-art product. Accordingly, defendants contend that the terms of the contract are being satisfied and the status quo is maintained by plaintiffs receiving the products they are currently receiving. The defendants claim that the plaintiffs are not likely to succeed on the merits of their claim because Defendant Guidant cannot be obligated by the contract to provide any products to the plaintiff and even if Guidant were bound by the contract, a plain reading of it and the words used do not lend themselves to requiring that plaintiffs be provided with state-of-the-art devices. We disagree and shall address each issue separately.

### 1. Does the contract bind Guidant?

■ The plaintiffs allege that the contract is binding on Intermedics' "successors and assigns". Contract § 17.3. Intermedics was purchased by Defendant Guidant on February 1, 1999. Guidant seeks to have direct employees sell their products rather than independent contractors such as the plaintiffs. Thus, the plaintiffs and Intermedics' other independent contractors had a choice to either become direct employees of Guidant or remain independent contractors with Intermedics. Guidant implemented a plan whereby its direct employees would be provided with the latest state-of-the-art technology and Intermedics independent contractors would be kept a generation or two behind in technology in order that the independent contractors would have an incentive to become direct employees. Plaintiffs allege that these actions violate the Agreement.

■ Under the preliminary injunction standard stated above, we must decide whether a reasonable likelihood exists that plaintiff will succeed on the merits of this issue at trial. "Under this standard, a plaintiff's right to relief need not be wholly without doubt. Instead, the Court need only determine whether the plaintiff has a fair and reasonable probability of success on the merits." *Lickteig v. Landauer*, 1991 WL 161963 *5 (E.D.Pa.1991) (internal citations omitted).

■ The plaintiff presents several different theories on which Guidant can be held liable under the agreement, the doctrine of "Equitable Assignment", the "Alter Ego" theory and the agency theory. The doctrine of equitable assignment provides that when one accepts the benefits of a contract he is bound by equity to be held to the terms of the contract. In the present case, Guidant continues to accept the benefits of the Agreement, i.e., the skills of

plaintiff's sales reps, and the business's good will. The law provides that when a successor accepts the benefits of a contract it also must perform the obligations thereunder. *Philip Morris, Inc. v. Pittsburgh Penguins, Inc.,* 589 F.Supp. 912 (W.D.Pa. 1983), *aff'd,* 738 F.2d 424 (3d Cir.1984).

Moreover, the testimony provided that Guidant and Intermedics are treated and thought of as one entity by the employees, and the affairs of Intermedics are directly controlled by Guidant employees. In fact, the defendant called no witnesses at the preliminary injunction hearing who worked exclusively for Intermedics, they were all employees of Guidant. Therefore, Guidant might be held accountable to the terms of the contract under an agency theory (which examines the degree of control a parent corporation exercises over the subsidiary) or the alter ego theory (under which the actions and liabilities of a subsidiary are attributable to its parent and corporate boundaries are ignored if fraud or inequity is shown).

Based on the above analysis, we find that the plaintiffs' have presented sufficient evidence of a reasonable likelihood of success on the merits, especially in light of the law which provides that "in a situation where factors of irreparable harm, interests of third parties and public considerations strongly favor the moving party, an injunction might be appropriate even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required." *Constructors Association of Western Pa. v. Kreps,* 573 F.2d 811, 815 (3d Cir.1978). As set forth more fully below, the remaining factors weigh heavily in the plaintiff's favor.

### 2. Duty to provide state-of-the-art technology

■ In addition, the defendants maintain that the Agreement does not mandate that they provide state-of-the-art technology to the plaintiffs. We disagree. The contract makes the plaintiffs the exclusive sales representatives in the territory of Intermedics products. The testimony reveals that this exclusivity will mean nothing and the contract will be a nullity, if the plaintiffs are provided with products which are one or two generations behind the state-of-the-art.

Implicit in every contract is a requirement of good faith. The defendants construing the contract in the manner they suggest indicates that they are not operating in good faith. Instead of using the contract for a mutual benefit between the parties, it is being used against the plaintiffs. Therefore, once again the plaintiff has shown a sufficient likelihood of success on the merits for the granting of the preliminary injunctions.

### 3. Status Quo

The defendant maintains that the main function of a preliminary injunction is to maintain the status quo. The status quo, according to the defendant is that plaintiffs receive Intermedics product and sell the same, and this has not changed. We disagree. The plaintiffs previously received the top of the line products from Intermedics and were able to compete with the products of others. The testimony provides that now, if a preliminary injunction is not granted, the plaintiffs will not be able to compete because they will not be receiving the most up-to-date product.

Furthermore, the Intermedics line which plaintiffs sell is being phased out and once the customers realize this they will no longer want those products. We cannot find that the status quo is maintained where the testimony establishes that the plaintiffs will go from a competitive business to out of business. It is clear also from the testimony of the "pillow and the bat"[2] that the defendants are fully cognizant of these facts, and that the contract can be used as a tool against the

---

**2.** "Pillow and the bat" is the phrase used by Guidant to refer to its policy of incentives and disincentives to encourage independent contractors to become direct employees.

plaintiffs as opposed to being used for the parties' mutual benefit.

B. Irreparable injury to the moving party

■ Next, the plaintiffs must establish that irreparable injury will be sustained if the preliminary injunction is not granted. We are convinced that they have met this element. The testimony provides that plaintiffs are likely to go out of business if the preliminary injunction is not granted. It is evident from the testimony that plaintiffs suffer from harm to its business good will, customer relationships and reputation as a dependable distributor. To award monetary damages for such an injury would be so highly speculative as to be inappropriate. *See, e.g., Loretangeli v. Critelli*, 853 F.2d 186, 196 n. 17 (3d Cir. 1988) (Irreparable harm is suffered where monetary damages are difficult to ascertain or are inadequate.) In addition, the contract provides that if its terms are breached, it will be considered irreparable injury. Agreement Article 12.4. The circumstances which plaintiffs find themselves in can only be described as draconian.

C. Irreparable injury to the nonmoving party

The third factor to be considered is whether the granting of the preliminary injunction will cause irreparable harm to the defendants. The defendants did not address this issue and we find that the granting of the injunction will have little or no effect on them. No burden will be imposed upon the defendants as they will be free to market, distribute and sell their products as before, except they will not be able to sell them to plaintiffs' customers, just as they are not selling to the plaintiff's customers currently.

D. Public Interest

■ Testimony was presented at the hearing that granting the preliminary injunction would be in the public interest.

Dr. Louis Blaum testified that the plaintiffs are the best in the business and if he had to switch to another supplier his patients would not receive the best service. He vividly described the personalized service and commitment of plaintiffs as they go about conducting their business in this sensitive area of health care.

Further, if the doctors and hospitals did decide to stay with the plaintiffs as their suppliers because they felt they provided the best service, the patients would suffer from not having the most up to date product. Defendants position would force plaintiffs to continue to sell to the public such critically sensitive merchandise (including pacemakers and implantable defibrillators) can only be considered a harsh business practice.

III. Conclusion

Based on the above reasoning, we find that all the elements required for the issuance of a preliminary injunction have been met. An appropriate order follows.

**ORDER**

AND NOW, to wit, this 5th day of March 1999, the plaintiffs' motion for preliminary injunction [31–1] is hereby GRANTED as follows:

1) Defendant Guidant is directed to use its "best efforts" to supply Devices For Life with sufficient quantities of state-of-the-art devices manufactured and/or distributed by Guidant in accordance with the obligation set forth in Sections 3.1.1 and 3.2.1 of the Sales Representative Agreement.

2) Defendant Guidant is directed to provide the appropriate education and training to Devices for Life representatives and employees concerning the technical capabilities of Guidant-manufactured products.

3) Guidant and its sales representatives are enjoined from calling upon, soliciting, offering products for sale to or otherwise communicating with any customer in the defined sales territory whose current de-

mand for such devices is fully serviced by Devices For Life.

This Order to be effective upon the plaintiff posting $25,000.00 (twenty-five thousand dollar) bond for the payment of potential damages suffered by one wrongfully enjoined. F.R.C.P. 65(c).[3]

3. Should any party consider the amount of security inappropriate, this court will upon application, set the matter down for hearing and further determination.