**BORIS and CAROL OLEKSIUK Acting for the benefit of CHRISTINA OLEKSIUK, a minor, Plaintiffs**

**v.**

**CARIBBEAN WATERSPORTS AND TOURS, LLC., GK ENTERPRISES, INC., and EQUIVEST ST. THOMAS, INC., Defendants.**

**EQUIVEST ST. THOMAS, INC., Defendant/Third-Party Plaintiff**

**v.**

**LEE ROSENBERG and KATHRYN GOODMAN, Third-Party Defendants**

Civil No. 2002-224

District Court of the Virgin Islands

Division of St. Thomas and St. John

July 7, 2005

*For Plaintiff*: JOSEPH J. MINGOLLA, ESQ.

*For Equivest, Defendant*: ANDREW C. SIMPSON, ESQ.

*For GK Enterprises, Defendant*: ARTHUR J. POMERANTZ, ESQ.

*For Caribbean Watersports, Defendant*: MATTHEW J. DUENSING, ESQ.

GOMEZ, *Judge*

## MEMORANDUM

(July 7, 2005)

This matter is before the Court on a motion by defendant Equivest St. Thomas Inc. ["Equivest"] for summary judgment on their cross-claim against defendant G.K. Enterprises, Inc. ["GK"].[1] Equivest asks this Court to find that it is entitled to a defense and indemnification in this action from GK. For the reasons stated herein, the Court will grant the motion for summary judgment on the cross-claim.

## I. FACTS AND PROCEDURAL HISTORY

On July 30, 2002, at the Elysian Beach Resort, a hotel on St. Thomas owned and operated by Equivest,[2] plaintiff Christina Oleksiuk ["Oleksiuk"] and five of her friends rented jet skis from the hotel. They rented the equipment from Caribbean Watersports and Tours, LLC ["Watersports"], who had subcontracted the jet ski operation from GK, which had a five-year contract to provide concession and water sports service ["concession agreement"] to the hotel beginning April 20, 2001.[3]

Oleksiuk drove her jet ski out into the water away from the hotel. At some point during the excursion, she collided with Third Party Defendant Kathryn Goodman. As a result, Oleksiuk sustained injuries, including a broken leg.

---

[1] Oral arguments on this motion were heard on January 21, 2005.

[2] Equivest is the successor by merger to Castle Acquisitions, Inc., ["CAI"] pursuant to a merger agreement dated October 15, 2001.

[3] GK's agreement was originally with CAI. As its legal successor, Equivest was bound by CAI's agreement with GK pursuant to paragraph 16 of the concession agreement, which provides that "covenants, conditions, and agreements made and entered into by the parties hereto are declared binding on their respective successors, representatives and assigns." *See Hillard v. Guidant Corp.*, 37 F. Supp. 2d 379, 381 (M.D. Pa. 1999) (holding successor bound by contract of predecessor when successor accepted benefits of agreement); *American Legacy Foundation v. Lorillard Tobacco Co.*, 831 A.2d 335, 345 (Del. Ch. 2003) ("the statement that successors-in-interest to the signatory ... companies shall be bound by the contract is little or nothing more than a statement of the law").

Plaintiff subsequently filed suit against Equivest, GK, and Watersports. Equivest then filed a cross-claim against GK, contending that pursuant to their contractual agreement, GK is required to defend Equivest in this action and also to indemnify and hold Equivest harmless from any liability arising from GK's operations at the hotel.[4] Equivest now moves for summary judgment on its cross-claim.

Equivest bases its claims on the concession agreement GK originally made with Equivest's predecessor company. Paragraph twelve of the concessions agreement provides:

> INDEMNIFICATION: G.K. Enterprises covenants at all times to hold CAI harmless from liability for damages and losses suffered or claimed to have been suffered by any other person, persons or corporations on or about the Resorts as a result of any act, omission, or default on the part of G.K. Enterprises, its agents, servants, employees or invitees, and from all reasonable costs and expenses incurred by G.K. Enterprises or CAI in connection therewith.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The non-moving party may not simply rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the non-movant. *Lawrence v. National Westminster Bank of New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). In considering the specific facts presented, the Court must draw all

---

[4] Equivest represents that GK failed or refused to accept its tender of defense and indemnity and the cross-claim was filed as a result. Equivest also asserts that GK failed to carry an insurance policy required by the terms of the concessions agreement, which provides: "G.K. enterprises agrees to maintain a minimum of one million dollars ($1,000,000) liability insurance policy and shall name CAI as an additional insured." (Concession Agreement at ¶ 10A.)

reasonable inferences therefrom in favor of the non-moving party. *Serbin v. Bora Corp.*, 96 F.3d 66, 69 (3d Cir. 1996).

## B. Ripeness and Entitlement to Defense and Indemnification

In order to reach Equivest's claim that it is entitled to a defense and indemnification from GK, the Court must first address whether Equivest's claim is ripe for consideration. At oral argument and in supplemental briefing, GK argued that Equivest's request for defense and indemnification is not yet ripe. Equivest contends that the matter is justiciable because it is currently incurring expenses in defending the suit and because the language of the concession agreement makes clear Equivest is entitled to both a defense and indemnification.

The issue of ripeness with respect to contract indemnity cases has been addressed in this circuit. In *AC and S, Inc. v. Aetna Casualty & Surety, Co.*, 666 F.2d 819 (3d Cir. 1981), an installer of insulation sued its two liability insurers, seeking a declaration that the comprehensive liability insurer had a duty to defend the insulation installer against numerous asbestosis suits filed against the installer. The United States Court of Appeals for the Third Circuit reversed the district court's decision that the request for declaratory relief was not ripe. *Id.* at 820, 822. The Third Circuit held that the matter was justiciable because it involved a current case or controversy between the parties and thus did not violate Article III of the United States Constitution:

> It would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. The respective interest and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. So viewed, the controversy is then quite proper for a judicial determination now.

*Id.* at 823.

The *AC & S* court went on to state that "[t]he obligation to defend is a current one as to which the parties are in conflict. It is independent of the facts of the underlying causes and must, by definition, be handled at this time." *Id.* Equivest is in a position similar to that of the installer in *AC &*

*S.* As in *AC & S,* Equivest's claim for defense is ripe for consideration. *Id.; see also Step-Saver Data Systems, Inc., v. Wyse Technology, The Software Link, Inc.,* 912 F.2d 643, 650 (3d Cir. 1990) (holding that a claim for indemnification was not ripe where it arose under common law and distinguishing this holding from *AC & S,* in which the claim arose under contract and was thus ripe).

The issue of providing a defense arises before that of indemnity, and even where the final amount of the indemnity obligation remains uncertain until the underlying matter is adjudicated or settled, the duty to defend can attach much earlier, in order to avoid "the accrual of avoidable damages to one not certain of his rights." *AC and S,* 666 F.2d at 823 (citing *Dewey and Almy Chemical Co., v. American Anode, Inc.,* 137 F.2d 68, 69 (3d Cir. 1943)).

To determine whether the terms of the concession agreement justify a finding that GK must defend and indemnify Equivest, the Court must look to the intent of the parties as reflected in the language of the contract itself. *See Bainville v. Hess Oil V.I. Corp.,* 837 F.2d 128, 131 (3d Cir. 1988) (stating that in "contract indemnity cases ... the question of whether actual liability is a prerequisite to a duty to indemnify is answered by reference to what the parties, by virtue of their contractual capacity, intended, as reflected in the language of the indemnity clause").

Although the relevant paragraph of the concession agreement does not contain the precise words "defend" or "indemnify," it is nonetheless evident that the parties signing the concession agreement intended that defense and indemnification should be provided. The section of the concession agreement labeled "INDEMNIFICATION" provides that it is GK's responsibility to "hold CAI harmless from liability for damages and losses suffered or claimed to have been suffered by any other person. ..." (Equivest's Mot. for Summ. J. at Ex. 1, ¶ 12.) The phrase "claimed to have suffered" would carry little meaning if it did not refer to claims alleged but not yet determined, and it is just such claims that Equivest is currently expending funds to address. The provision also states that GK must hold CAI, and therefore Equivest, harmless from "all reasonable costs and expenses incurred ... therewith."

That language is the functional equivalent of a requirement to defend and indemnify. Because the underlying claim falls within the ambit of that contractual indemnity agreement, the Court finds that Equivest is entitled to a defense and indemnification by GK. *See Pacific Indem. Co.*

*v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (holding that an insurer's duty to defend pursuant to an insurance contract arises "whenever the complaint filed by the injured party may potentially come within the policy's coverage"); *see also C.H. Heist Caribe Corp. v. American Home Assur.*, 640 F.2d 479, 483 (3d Cir. 1981) (stating that the duty to defend arises whenever the allegations in the complaint in an underlying litigation state a claim to which the insurance policy potentially applies).

Accordingly, because there is no material fact in dispute and because Equivest is entitled to judgment as a matter of law, the motion for summary judgment on the cross-claim will be granted.[5]

---

[5] GK also claims that the concessions agreement does not apply to this case because the accident did not occur "on or about the Resort" as required by the concessions agreement. GK's argument is unpersuasive and must be rejected.

The cases cited by GK in support of its position all involve banks, and restrictions that indemnification was limited to acts committed on or near the bank premises. *Oritani Savings and Loan Association v. Fidelity and Deposit Co. of Maryland*, 989 F.2d 635 (3d Cir. 1993); *Alpine State Bank v. Ohio Casualty Ins. Co.*, 941 F.2d 554 (7th Cir. 1991); *Privatebank and Trust Co. v. Progressive Casualty Ins. Co.*, 2004 U.S. Dist. LEXIS 8938 (N.D. Ill. 2004). These banking cases, however, are not analogous for one important reason—it would be impossible to use a jet ski on the immediate physical premises of the resort. Indeed, the logic and the language of the indemnity agreement compel an interpretation other than the one GK seeks in this instance. The concessions agreement contemplates this, as it requires GK to "provide a chase boat and a supervisory employee for emergency purposes at each Resort site." (Equivest Mot. for Summ. J. at Ex. 1, ¶ 4J.) Such a requirement would not be necessary were it not expected that people would travel some distance from the resort while doing water sports.