Leonard DOMINIC, Plaintiff,

v.

**HESS OIL VIRGIN ISLANDS CORP. and Shell Oil Co. of Puerto Rico, Ltd., Defendants.**

**and**

**HESS OIL VIRGIN ISLANDS CORP., Third Party Plaintiff,**

v.

**COMMUNICATIONS SYSTEMS & MAINTENANCE CORPORATION, Third Party Defendant.**

Civ. No. 1984/202.

District Court of Virgin Islands, D. St. Croix.

Sept. 17, 1985.

Britain H. Bryant and Stacy L. White, Christiansted, St. Croix, Virgin Islands, for Hess Oil Virgin Islands Corp.

Wilfredo Geigel and Michael F. Ross, Christiansted, St. Croix, Virgin Islands, for Communications Systems & Maintenance Corp.

## MEMORANDUM OPINION

DAVID V. O'BRIEN, District Judge.

We deal in this case with yet another indemnification agreement dispute between Hess Oil Virgin Islands Corporation ("HOVIC") and businesses which do construction and maintenance work at its St. Croix refinery. HOVIC has continually refined its contract documents as each court has interpreted these agreements, seeking to close any and all loopholes to make them legally airtight.

In this case, HOVIC has succeeded.

## I  FACTS

Leonard Dominic ("Dominic") was working for Communications Systems & Maintenance Corporation ("CS&M") at the HOVIC refinery on July 12, 1983, when he was injured. He alleged that he was working with a cleaning solvent when he became ill, lost consciousness and fell. He claimed that HOVIC failed to warn him of the hazard involved in the inhalation of the solvent, and that this proximately caused his injuries.

CS&M was involved at HOVIC pursuant to a standard contract with attached indemnification clause made a part of that contract. This contract provided that CS&M would:

indemnify, hold harmless and defend HOVIC and its affiliates, successors and assigns, specifically including but not limited to St. Croix Petrochemical Corporation, up to the gross sum of the first $3,000,000 for each occurrence, from and against any and all demands, liability, losses, damages and/or expenses which

HOVIC or SCPC may suffer or SCPC may be liable by reason of injury (including death) to any person or damage to any property arising out of or in any manner connected with the operation to be performed under this purchase order, whether or not due in whole or any part to any act, omission or negligence of HOVIC or SCPC or any of its representatives or employees or by any other person. Seller agrees to this notwithstanding and regardless of the Virgin Islands Comparative Negligence Statute, Title 5, V.I.C. Section 1451.

When Dominic filed this action against HOVIC, it in turn tendered the defense to CS&M. When CS&M rejected the tender, HOVIC filed a third party action and proceeded to defend itself while pressing its contractual indemnification claim against CS&M.

Dominic, meanwhile, discovered that Shell Oil Company or an affiliate might also have potential liability as the manufacturer of the cleaning solvent which he claimed caused his injuries. He promptly added Shell as a defendant.

After considerable discovery, HOVIC sensed an opportunity to settle its case with Dominic. Negotiations led to a settlement for $50,000, with Dominic free to continue his case against Shell. HOVIC notified CS&M that it had reached the settlement and demanded it be indemnified for the settlement amount. CS&M ignored the letter. HOVIC completed the settlement without the involvement of either CS&M or CS&M's insurance carrier.

Now, HOVIC moves for summary judgment on its indemnity claim, arguing that the agreement is clear and unambiguous, that CS&M rejected the tender of the defense, was made aware of the settlement, and either expressly rejected participation or ignored all entreaties that it become involved.

CS&M claims that there are material factual matters still in dispute, i.e., whether HOVIC was a statutory employer and thus not liable to Dominic as a matter of law, whether the settlement was reasonable, whether the agreement was against public policy, issues of reasonable notice, and intent of the parties.

## II. DISCUSSION

### A. *The Public Policy Argument*

■ CS&M's contention that the agreement in question, which indemnifies HOVIC against its own negligence, is void against public policy, would come as a surprise to the Third Circuit. This appellate court has resolved so many disputes involving these agreements, that the public policy issue has long been put to rest. *See Eastern Airlines, Inc. v. INA*, 758 F.2d 132 (3d Cir.1985). Repeatedly the circuit court has held that there is no public policy which prevents judicial enforcement of an agreement to shift liability for the consequences of one's own negligence. *See also United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970). CS&M offers us no authority which would effectively counter the steady stream of Third Circuit opinions upholding agreements for indemnity similar to that herein.

### B. *Failure to Raise Defenses*

CS&M also argues that HOVIC should have raised the defense that it was a statutory employer under the borrowed servant doctrine, as applied in the Virgin Islands by *Vanterpool v. HOVIC*, 589 F.Supp. 334 (D.V.I.1984), affirmed as to that issue, 766 F.2d 117 (3d Cir.1985). HOVIC urges strongly that CS&M has waived any right to criticize, or exonerate itself by reason of HOVIC's legal strategy, by rejecting the tender of defense. HOVIC also notes that Dominic did not meet the test enunciated in *Vanterpool, supra*, by the Third Circuit at 121 *et. seq.*

■ There is no doubt that CS&M should have accepted the tender. The indemnification agreement specifically provides for such a defense against claims arising out of CS&M's on-site work at HOVIC. Dominic's complaint clearly states a claim which would come within the requirement.

As we were forcefully told in *C.H. Heist v. American Home Assurance Company*, 640 F.2d 479, 483 (3d Cir.1981), the duty to defend comes into play if the allegations of the complaint "state on their face a claim ... which ... potentially applies." (Citing *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance Co.*, 467 F.Supp. 17, 19 (E.D.Pa.1979). *See also Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 766 (3d Cir. 1985).

■ Had CS&M met its initial obligation to take over the defense of HOVIC, there is no question it would be entitled to dictate litigation strategy and raise such defenses as it considered appropriate. By failing to even defend, however, we find that CS&M is estopped from criticizing HOVIC's strategy as a means of escaping obligations under the indemnity agreement. This is parallel to the situation where an insurer refused to defend an insured under a contract of insurance. *Maneikis v. St. Paul Insurance Co. of Illinois*, 655 F.2d 818, 821 (7th Cir.1981). It ill befits CS&M to carp at HOVIC over the manner in which it defended itself, after violating its contractual duty to HOVIC in the first instance. As stated, CS&M's duty can be compared to that of an insurer to whom the defense of an insured under a contract of insurance has been tendered.

> ... only three options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend.

*Maneikis v. St. Paul Insurance Co. of Illinois, supra*, at 821.

CS&M adopted the third option and refused either to defend or seek a declaratory judgment. What occurred thereafter occurred at its peril.

## C. *Reasonableness of the Settlement*

While we say CS&M ignored its obligations at its own peril, that is not to suggest that CS&M cannot make certain arguments concerning HOVIC's settlement with Dominic. As stated earlier, the case against HOVIC was settled for $50,000. CS&M now claims that not only was the settlement unreasonable, but HOVIC had no liability of any kind to Dominic and accordingly, no reason to settle with him. While we have held that CS&M waived any right to criticize HOVIC's litigation strategy and defenses raised, the issues of liability and reasonableness may be pressed.

Of course, it is difficult to ascertain whether HOVIC was *actually* liable to Dominic, since it contested liability until settlement, and no fact finder made a determination in that regard. What is clear, however, is that HOVIC was *potentially* liable to Dominic as the possessor of land, having invited him to work there, or as the supplier of a dangerous chattel for his use. *See generally*, Restatement (Second) of Torts, Chapters 13 and 14.

The argument advanced by CS&M and discussed earlier is that HOVIC should have raised the statutory employer defense approved by *Vanterpool v. HOVIC, supra*. If it had done so, CS&M maintains, it would not have had any liability to Dominic, and the indemnification would not come into force. Although we held earlier that CS&M is estopped from citing HOVIC's failure to advance this defense as an excuse for its own breach, we must still discuss the matter in the context of the potential liability of HOVIC had the defense been raised. The easy answer is that HOVIC would have been liable, since Dominic did not meet the standard required by the Third Circuit in *Vanterpool v. HOVIC, supra*. In order to become a borrowed employee, Dominic would have to have come under HOVIC's control and direction. He did not. He never signed a loanee form as Vanterpool had done, and HOVIC conceded that it had never considered him a loanee, or borrowed employee. Under such circumstances, it would have been frivolous

for HOVIC to make the claim that Dominic was a borrowed employee, since that notion would never have survived a motion to strike it as an affirmative defense. In the absence of such a defense, HOVIC was potentially liable to Dominic.

We recognize that the Third Circuit has yet to rule whether an indemnitee, such as HOVIC, need show only potential liability to recover from an indemnitor, such as CS&M. *M & O Marine, Inc. v. Marquette Co.*, 730 F.2d 133, 135 (3d Cir. 1984). Some courts have adopted an exception to the general rule and allowed the indemnitee, who settles with the injured party, to secure indemnification upon proof of only potential liability. *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974). But, to fall within this category, as *M & O Marine v. Marquette Co., supra,* explains at 136, the indemnitee (HOVIC) would have to offer the indemnitor (CS&M) the choice of either approving the settlement or taking over the defense.

Since HOVIC tendered the defense and it was rejected, the inference is clear that when the Third Circuit is confronted with a situation as herein, it will permit proof of only potential liability to suffice. *See also* the dissent by Judge Seitz in *Frederick v. HOVIC*, 642 F.2d 53, 56 (3d Cir.1981), which discusses actual and potential liability in this context. We find that the record demonstrates HOVIC's potential liability and that this is sufficient to actuate its right to indemnity.

Other than CS&M's claim that the settlement was unreasonable because HOVIC had no liability to Dominic, CS&M cites no other facts from the record to demonstrate unreasonableness. A review of the discovery in the case discloses that Dominic was applying the cleaning solution when he became ill and fell. He felt a sharp pain in his shoulder, ribs and left arm, underwent sweating, nausea, fever, and began discharging blood. He was out of work for several months and still suffers some of those symptoms. His medical experts have diagnosed possibly permanent injury to the hand and shoulder. He feels weaker and cannot play soccer as he once did. His workmen's compensation lien, which must be paid from his settlement funds, is approximately $25,000. Thus, after that payment and the attorneys' fees and other costs, he will have very little remaining from the HOVIC settlement.

This Court has conducted numerous trials of cases against HOVIC similar to the one at issue herein, and we have been involved in pre-trial settlements of similar cases. Judgments or settlements in the amount of hundreds of thousands of dollars is not unusual. HOVIC acted reasonably in cutting its losses for $50,000.

## CONCLUSION

CS&M's challenge to the indemnification agreement is quite limited. It does not deny its execution, or what it says, or that CS&M freely entered into it hoping to obtain substantial work at the refinery. There is no ambiguity whatsoever as to what it is intended to do by way of protection for HOVIC. CS&M offers us no explanation whatsoever why it rejected the tender of the defense, which might have strengthened its position before the Court at the present time. Having discussed and discarded the arguments made by CS&M, we will enter summary judgment in favor of HOVIC in the amount of $50,000, together with its costs of defense of the action by Dominic, and its costs of prosecution of the third party complaint against CS&M.