El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar en qué momento se activa la obligación de un contratista de defender al principal conforme a una cláusula de indemnización o liberación de responsabilidad (hold harmless). Por los fundamentos que exponemos a continuación, concluimos que, conforme al texto pactado, la obligación de defender se activa desde la presentación de una reclamación en la que se *4 alegue que los daños sufridos por el reclamante fueron consecuencia, total o parcialmente, de la negligencia del contratista.
HH
Posadas de Puerto Rico, L.L.C. (Posadas) es la dueña y operadora del Hotel Condado Plaza. Posadas y Ray Engineers, P.S.C. (Ray) suscribieron un contrato de servicios para la renovación y remodelación del hotel, incluida el área de la entrada y del vestíbulo, también conocida como el “redondel”. Conforme a ese contrato, Ray tenía la obligación de preparar y certificar los planos finales arquitectónicos y de ingeniería para el proyecto. Esos planos arquitectónicos debían incluir la preparación, el tratamiento y la terminación de todas las superficies, incluyendo los pisos y sus elevaciones. Así las cosas, los trabajos de remodelación fueron finalizados por Ray y el Hotel reabrió sus puertas.
Posteriormente, el 7 de enero de 2009, los esposos María Burgos López y Miguel Mercado Alvarado y la Sociedad Legal de Gananciales compuesta por ambos (los esposos Burgos-Mercado), presentaron una demanda por daños y perjuicios contra Posadas y Ray. Alegaron que mientras la señora Burgos López se encontraba en los predios del hotel, perdió el balance por motivo de un escalón o una bajada imperceptible, pues se trataba de una superficie continua, sin variante de colores ni alguna otra indicación que asordara a detectar su existencia. Se alegó contra Ray que la condición peligrosa consistió en permitir que el escalón o la bajada quedara o fuera construido de una forma totalmente imperceptible a la vista. Apéndice, págs. 132-133.
Posadas contestó la demanda y, a su vez, presentó una demanda contra Ray como tercero demandado, la cual fue acogida por el Tribunal de Primera Instancia como una demanda contra coparte. Posadas alegó que Ray fue quien *5 estuvo a cargo del diseño de la entrada, las especificaciones de las elevaciones, los colores y la textura de la superficie peatonal y vehicular, y que las alegaciones de los demandantes referentes a que el área descrita es una condición peligrosa incidían directamente sobre las labores hechas por Ray. Del mismo modo, Posadas reclamó el cumplimiento específico de la Sec. 12.2.3.1 del contrato que suscribió con Ray. En esta, según alegó, Ray se comprometió a indemnizar, liberar de responsabilidad y asumir la defensa de Posadas por todas las reclamaciones o pérdidas que surgieran, en todo o en parte, como resultado de su negligencia, errores u omisiones. Apéndice, pág. 59.
Tras varios incidentes procesales, los esposos BurgosMercado presentaron junto a Ray una estipulación transaccional parcial. A raíz de esta estipulación, el Tribunal de Primera Instancia dictó sentencia parcial con perjuicio en cuanto a Ray y su aseguradora. Igualmente, los demandantes llegaron a un acuerdo con Posadas y presentaron una moción de desistimiento. El Tribunal de Primera Instancia dictó sentencia parcial con peijuicio en cuanto a Posadas.
De esta forma, la controversia restante se limitó a la demanda contra coparte que presentó Posadas contra Ray en cuanto al cumplimiento específico de la cláusula de hold harmless. En particular, la cláusula en controversia estipulada por las partes establecía lo siguiente:
The Architect [Ray] shall defend, indemnify and hold harmless the Owner [Posadas], Owner’s Lender, Owner’s affiliated companies, Owner’s consultants and their respective officers, directors, employees and agents (the “Indemnities”), for all claims, damages, losses, fees, expenses and costs (including but not limited to legal fees and expenses and court, mediation, and arbitration costs) that arise as result, in whole or in part, of the intentional acts, negligence, errors, omissions, or failure to perform by the Architect [Ray], its employees, its agents, or its Consultants except for that portion of such damages, losses, fees, expenses and costs that are caused solely by the negligence of Owner. Apéndice, pág. 151.
*6 Además, las partes estipularon en corte abierta la autenticidad de varios documentos, entre los que se encontraba una carta de 7 de octubre de 2008 enviada por Posadas a Ray. En esa carta, Posadas le notificó a Ray el incidente de la señora Burgos López y le solicitó que diera cumplimiento específico a su obligación de defenderlos y mantenerlos libre de responsabilidad por el incidente. Apéndice, págs. 165 y 486. De igual forma, se estipuló en corte abierta la autenticidad de una carta de 7 de enero de 2009, remitida por Ray a Posadas, en la que Ray condicionó su obligación de pro-veer la defensa a que Posadas produjera prueba que estableciera su negligencia. Apéndice, págs. 165 y 535. El Tribunal de Primera Instancia también incluyó como un hecho incontrovertido que el 26 de enero de 2009, Posadas le envió una segunda carta a Ray en la que le notificó que la demanda de epígrafe ya había sido presentada y en la que le solicitó una vez más que asumiera su representación legal en ese procedimiento. Apéndice, págs. 29 y 535-A.
Ante ese cuadro, Ray presentó una moción de sentencia sumaria en la que solicitó la desestimación de la demanda contra coparte. Posadas presentó su oposición a esta moción y, a su vez, presentó una contra solicitud de sentencia sumaria para que se le ordenara a Ray reembolsarle los gastos en los que se vio obligado a incurrir para defenderse debido a la negativa de Ray de proveerle representación legal. Como anejo a su moción de sentencia sumaria, Posadas incluyó una declaración jurada del Ledo. Francisco J. Colón Pagán, en la que este certifica el monto facturado por los servicios legales prestados a Posadas en el caso de autos. Apéndice, pág. 557. También se incluyó como anejo copia de las facturas y los cheques pagados por esos servicios. Apéndice, págs. 558-633. Ray no se opuso a esta solicitud.
Posteriormente, el Tribunal de Primera Instancia emitió una sentencia en la que declaró “no ha lugar” la moción de sentencia sumaria de Ray y “con lugar” la de Posadas. De esta forma, el foro primario resolvió que las alegaciones *7 de negligencia contenidas en la demanda de la señora Bur-gos López en contra de Posadas y Ray activaron la obligación de este último de defender o proveer representación legal a Posadas. Así, el foro primario ordenó a Ray a que pagara a Posadas $59,880.67, más los intereses a razón de 4.25 por ciento a partir de la notificación de la sentencia, por los honorarios de abogado en los que tuvo que incurrir Posadas para defenderse de la reclamación de los esposos Burgos-Mercado hasta ese momento.
Inconforme con la determinación del Tribunal de Primera Instancia, Ray acudió ante el Tribunal de Apelaciones. En su recurso de apelación, Ray planteó por primera vez que existían hechos materiales en controversia que impedían la resolución de este caso mediante sentencia sumaria. Uno de los hechos materiales que alegó que estaba en controversia era la determinación de si Ray fue, en efecto, negligente, como condición para que se activase su obligación de proveer defensa a Posadas. También planteó que el monto de los gastos y honorarios de abogado en los que incurrió Posadas estaba en controversia.
El foro apelativo intermedio revocó la sentencia del Tribunal de Primera Instancia y resolvió que el asunto de la negligencia de Ray era un hecho esencial material en controversia que debía resolverse en un juicio en sus méritos. Así, concluyó que no procedía resolver sumariamente que la cláusula conocida como hold harmless se activó, pues nunca se probó la negligencia de Ray.
Insatisfecho, Posadas presentó un recurso de apelación ante este Tribunal, el cual acogimos como una solicitud de certiorari.
rH h-H
A. En nuestro ordenamiento jurídico se reconoce el principio de libertad de contratación, el cual permite a las partes pactar los términos y condiciones que tengan por *8 convenientes. Arthur Young & Co. v. Vega III, 136 DPR 157 (1994). No obstante, esa libertad no es infinita. Encuentra su límite en el Art. 1207 del Código Civil de Puerto Rico, 31 LPRA see. 3372. Allí se establece que estos pactos, cláusulas y condiciones serán válidos, siempre y cuando no sean contrarios a las leyes, a la moral ni al orden público.
Por otro lado, una vez perfeccionados, los contratos tienen fuerza de ley entre las partes, “y desde entonces obligan, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley”. 31 LPRA sec. 3375. Véase, además, Oriental Bank v. Perapi et al., 192 DPR 7 (2014).
Como corolario de estos principios, hemos validado los acuerdos y las cláusulas de indemnización o liberación de responsabilidad, conocidos comúnmente en el campo de la construcción como hold harmless agreements o indemnity clauses. Natal Cruz v. Santiago Negrón et al., 188 DPR 564, 584-585 (2013).
Este tipo de acuerdo permite a “las partes anticipa [r] el ámbito de sus obligaciones y planifica [r] de acuerdo con ello”. Torres Solís et al. v. A.E.E. et als., 136 DPR 302, 314 (1994). Véase, además, C.M. Pisano, Judicial Interpretation of Indemnity Clauses, 48 La. L. Rev. 169 (1987). De esta forma, “una parte se compromete o asume la obligación de defender a otra de las reclamaciones que le haga un tercero y de las que no [necesariamente] sería responsable si no existiera el contrato”. Natal Cruz v. Santiago Negrón et al., supra, pág. 585.
Estos acuerdos y cláusulas suelen incluir un lenguaje estándar reproducido de contratos modelos preparados por organizaciones que agrupan profesionales de la industria de la construcción. Ejemplos de esto son las publicaciones: “General Conditions of the Contract for Construction” del American Institute of Architects y “Standard General Con *9 ditions of the Construction Contract” del Engineer’s Joint Contract Documents Committee. 4 Stein’s Construction Law 13.17, pág. 13-128 (2014). Véanse, además: 5 Construction and Design Law Sec. 36.4c.3, págs. 102-104 (1996); R.F. Cushman y T.G. Bottum, Architect and Engineer Liability: Claims Against Design Professionals, New York, Wiley Law Pub., 1987, Sec. 5.19, págs. 90-91 esc. 57. Así lo hemos reconocido en el pasado. Este Tribunal ha expresado que “[e]n el derecho americano, donde rigen principios similares a los nuestros en materia de contratación, se han adoptado determinadas reglas para la interpretación de documentos de descargo (release) [hoy conocidos como acuerdos de indemnización o relevo de responsabilidad {“hold harmless”)], que bien podemos hacerlas nuestras sin menoscabo alguno para nuestro derecho estatutario”. (Énfasis nuestro). Cabrera v. Doval, 76 DPR 777, 780-781 (1954). Ese ejercicio adjudicativo no es extraño en jurisdicciones como la nuestra.
Puerto Rico cuenta con un sistema jurídico mixto. S.L.G. Rodríguez-Rivera v. Bahía Park, 180 DPR 340, 369 (2010), citando a J. Trías Monge, The Structure of the American Legal System-Its Sources, Forms and Theory of Law, 51 Rev. Jur. UPR 11,16 (1982). Véase, además, E. Rivera García, El andamiaje legal de Puerto Rico: fusión enriquecida del derecho común anglosajón y la tradición civilista, 82 Rev. Jur. UPR 687 (2013). Esto es producto de la “interacción centenaria de principios legales, casuística, leyes y códigos provenientes tanto del derecho civil español como del derecho consuetudinario {common law) estadounidense”. S.L.G. Rodríguez-Rivera v. Bahía Park, supra. Por esta razón, en casos en donde hemos tenido ante nuestra consideración controversias relacionadas a figuras que se originan y desarrollan en el common law estadounidense y sobre las que carecemos de “precedentes que atiendan específicamente la controversia ante nos”, no hemos dudado en recurrir a la jurisprudencia de ese sistema. (Énfasis suplido). Residentes Parkville v. Díaz, 159 DPR 374, 386 (2003).
*10 Así, hemos reiterado que no dudaremos “en [...] adoptar doctrinas y normas de interpretación del common law cuando las [...] consider[emos] acertadas y enriquecedoras de nuestro Derecho”. Arthur Young & Co. v. Vega III, supra, pág. 169. En esos casos apropiados, “la ley común no es una frase que debemos oír como un conjuro, y por otro lado tampoco debemos alarmarnos por la mera circunstancia de que cualquier doctrina en particular, por estar basada en la justicia y la razón universal, resulta tener su origen en la ley común”. Futurama Import Corp. v. Trans Caribbean, 104 DPR 609, 615 (1976), citando con aprobación a El Municipio de Vega Baja v. Smith, 27 DPR 632, 637-638 (1919).
Ahora bien, al analizar y adoptar en nuestro ordenamiento normas del common law estadounidense, es importante que actuemos “con la reflexión y corrección debida para que no desnaturalicemos los principios de derecho civilistas y del derecho consuetudinario que constituyen parte fundamental de nuestro ordenamiento legal autóctono y que, en conjunto, en sus ámbitos respectivos, conforman el derecho puertorriqueño contemporáneo”. S.L.G. Rodríguez-Rivera v. Bahía Park, supra, pág. 360.
En atención al origen de los acuerdos de indemnización o relevo de responsabilidad (hold harmless) en la industria de la construcción, nos servimos del desarrollo de la doctrina y jurisprudencia en el common law estadounidense que los interpreta, para estudiar los contornos de la obligación de defender, figura central en controversia en el caso que hoy atendemos. No es apropiado obviar esa doctrina específica y en cambio, resolver la controversia de este caso únicamente a base del principio general de buena fe y lealtad contractual, sin referencia alguna a normas, doctrinas o casos provenientes del sistema donde se origina la figura en cuestión y que atiendan el asunto ante nuestra consideración de forma clara y expresa. Utilizar esa metodología puede llevar a que se interprete una cláusula mo *11 délo de forma incompatible con lo que se ha resuelto en su jurisdicción de procedencia.
La estabilidad del sistema legal y del tráfico comercial no puede estar sujeta a esa ambigüedad e incertidumbre. Las partes contratantes utilizan conscientemente un lenguaje que en su industria tiene un significado particular. No seguir esos parámetros en los que las partes depositaron sus expectativas puede afectar negativamente la forma como se conducen los negocios en ese sector económico en Puerto Rico.
En este caso, las partes pactaron un lenguaje específico que proviene de modelos de contratos uniformes preparados por la industria de la construcción estadounidense. Por eso, interpretamos el lenguaje del contrato cónsono a como se ha hecho en la jurisdicción de donde proviene. De esa forma, fundamentamos el resultado al que llegamos en la intención de las partes contratantes que protege nuestro Código Civil.
En particular, la obligación de defender (duty to defend) ha sido definida por la jurisprudencia del common law estadounidense como el deber que tiene el contratista de proveer o pagar por los servicios de representación legal al principal en todas las reclamaciones cubiertas por el acuerdo de relevo de responsabilidad o de indemnización pactado entre ambos. Crawford v. Weather Shield Mfg., Inc., 187 P.3d 424 (Cal. 2008).
Esta obligación, en este contexto, “es distinta a [...] una obligación de pagar a otro, luego de adjudicado el caso, por los gastos en que este haya incurrido para defenderse a sí mismo”. (Traducción nuestra). Crawford v. Weather Shield Mfg., Inc., supra, pág. 432. De igual forma, la doctrina del common law estadounidense en este campo ha establecido que la obligación de defender es independiente al deber de indemnizar y, no está sujeta a los méritos de la reclamación o demanda subyacente. “When discussing an alleged breach of the duty to defend under an indemnification *12 agreement [...] an indemnitor’s duty to defend does not depend on the merits of the claim asserted. Instead, the duty to defend arises when potential liability is asserted against the indemnitee”. (Citas omitidas). Estate of Kriefall v. Sizzler USA Franchise, Inc., 816 N.W.2d 853, 869 (Wis. 2012). Por esto, la obligación de defender “necesariamente nace tan pronto surgen reclamaciones [cubiertas por el acuerdo] en contra del [principal], y puede continuar hasta que estas sean resueltas”. (Traducción nuestra). Crawford v. Weather Shield Mfg. Inc., supra, pág. 432.
Así, queda claro que en el common law el deber de defender no depende del resultado del litigio, ni de que en efecto se determine que el contratista debe indemnizar al principal. Por el contrario, la obligación de defender se activa al momento en que el principal le solicita al contratista que le defienda de una reclamación en donde se alegan actos cubiertos por el acuerdo (“tender of defense”). Crawford v. Weather Shield Mfg. Inc., supra, pág. 434. Véase, además, UDC-Universal Development v. CH2M Hill, 103 Cal. Rptr.3d 684, 693 (Cal. Ct. App. 2010).
Por otra parte, aunque en un contexto distinto al de este caso, esto es, el de los contratos de seguros, nosotros también nos hemos expresado sobre el deber de defender o pro-veer representación legal. En específico, hemos dejado claro que en los contratos de seguros este deber “se mide, en primer término, por las alegaciones del demandante y si dichas alegaciones establecen hechos que colocan el daño dentro de la cubierta de la póliza”. PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 DPR 881, 896 (1994). Más aún, “[l]a obligación de la compañía aseguradora de asumir la representación legal surgirá cuando de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado está protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso”. Id.(1)
*13 Salvo que esté prohibido por ley, el alcance de los acuerdos de indemnización o relevo de responsabilidad, es decir, el grado de responsabilidad y riesgo que asumirá cada una de las partes contratantes puede ser objeto de negociación. Así, y a diferencia de la responsabilidad extra-contractual, los detalles y las circunstancias en las que se activará y será exigible la responsabilidad contractual dependerán del lenguaje específico que acuerden las partes. Bainville v. Hess Oil V.I. Corp., 837 F.2d 128, 130-131 (3er Cir. 1988).
Por ello, al momento de evaluar una cláusula de “hold harmless”, es imperativo examinar en detalle los términos y condiciones pactados. En aquellos casos en donde la intención de las partes surja claramente de los términos del acuerdo, “los tribunales la aplicarán a menos que sean contrarias al interés público”. Torres Solís et al. v. A.E.E. et als., supra. Véanse, además, el Art. 1248 del Código Civil, 31 LPRAsec. 3471 y Marcial v. Tomé, 144 DPR 522 (1997). En cambio, cuando no sea posible determinar la intención de las partes de una lectura de los términos pactados, será necesario recurrir a las normas dispuestas en el Art. 1234 del Código Civil, 31 LPRAsec. 3472. Estas permiten juzgar la intención de las partes por sus actos anteriores, coetáneos y posteriores al perfeccionamiento del contrato. En esta misma línea, hemos expresado que al interpretar los contratos “es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual [;] no *14 se puede buscar oscuridad ni tergiversar la interpretación de contratos para llegar a resultados absurdos o injustos”. S.L.G. Irizarry v. S.L.G. García, 155 DPR 713, 726 (2001).
Por otro lado, en materia de acuerdos de liberación de responsabilidad en el common law estadounidense, el incumplimiento con la obligación de defender o proveer representación legal da lugar a una acción por incumplimiento de contrato en la que se solicita el reembolso de los gastos y honorarios de abogado en los que tuvo que incurrir la parte afectada. Crawford v. Weather Shield Mfg. Inc., supra, págs. 557-558. Esto es compatible con lo dispuesto en el Art. 1054 del Código Civil de Puerto Rico, 31 LPRA sec. 3018, el cual establece que “[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia, morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas”.
B. En este caso, Posadas plantea que la obligación de Ray de defenderle se activó tan pronto la señora Burgos López presentó su demanda por daños y perjuicios. Debido a la negativa de Ray a cumplir con esta obligación, Posadas solicita que se le ordene pagarle por todos los gastos y honorarios de abogado en los que tuvo que incurrir para defenderse de esta demanda. Por su parte, Ray argumenta que sus obligaciones no se activan hasta que se resuelva la demanda subyacente y se determine que los hechos alegados en esta surgen, en efecto, de sus actos intencionales, negligentes, errores, omisiones o fallas en su desempeño. Resolvemos que el planteamiento de Posadas es el correcto.
En lo pertinente, la cláusula en cuestión establece que: “[Ray] shall defend, indemnify, and hold harmless [Posadas] [...] for all claims [...] that arise as result, in whole or in part, of the [...] negligence [...] by [Ray]”. De lo anterior se desprende que esta cláusula en realidad contiene varias obligaciones, a saber, proveer representación legal o defender {defend), indemnizar (indemnify) y liberar de responsabilidad *15 (hold harmless). Cada una de estas obligaciones es independiente de la otra, aunque debido a la naturaleza del acuerdo, están inherentemente relacionadas. Dado que en el caso de autos la reclamación de Posadas se centra esencialmente en la obligación de defender, concentramos nuestra discusión en esta.
Adviértase que la cláusula es clara en cuanto a que solo sujeta el deber de defender de Ray a que exista una demanda o reclamación {claim) que surja o se origine como resultado {that arise as result), total o parcialmente, de su negligencia (entre otras causas). En otras palabras, del texto pactado se desprende que la intención de las partes fue que la obligación de Ray de defender se activara al momento de presentarse una demanda o reclamación donde el demandante alegara que el daño sufrido fue ocasionado, total o parcialmente, por la negligencia de Ray.
El término claim ha sido definido como “el conjunto de hechos que dan lugar a un derecho que se puede hacer cumplir por un tribunal”. (Traducción nuestra). CLAIM, Black’s Law Dictionary, 9na ed., St. Paul, Ed. West Pub. Co., 2009, págs. 281-282. En este caso, no hay duda de que la demanda de la señora Burgos López y su esposo es una reclamación para fines de la cláusula en controversia, puesto que adujo una causa de acción de daños y perjuicios para que se le indemnizara por los daños sufridos como consecuencia de la caída en el hotel.
Además, un examen de la demanda demuestra que esta contiene alegaciones de negligencia contra Ray. Específicamente, en las alegaciones número dieciocho y veinte de la demanda enmendada se planteó que Ray fue responsable del diseño y la construcción defectuosa del área donde ocurrió el incidente alegado, al crear un escalón o bajada imperceptible a la vista, y no tomar providencias ante el riesgo creado. Apéndice, págs. 132-133.
Por lo tanto, basado en el texto pactado por las partes, en nuestros precedentes en materia de contratos de seguro *16 relacionados al deber de defender y en los desarrollos jurisprudenciales del common law estadounidense en este campo, los cuales incorporamos a nuestro ordenamiento por entender que son acertados, adecuados y cónsonos con nuestro sistema, resolvemos que la obligación de Ray de defender a Posadas surgió desde el momento cuando la señora Burgos López presentó su reclamación. Avalar una interpretación contraria, según propone Ray, obligaría a las partes a entrar en un litigio innecesario para dirimir un asunto que fue previsto y para el que precisamente se pactó la obligación de defender en la cláusula de hold harmless.
Más aún, condicionar la obligación de defender en este caso a que primero recaiga una sentencia que resuelva la reclamación en los méritos sería un contrasentido e inutilizaría la obligación, pues en ese entonces ya no habría ninguna reclamación que defender. Esto tendría el efecto de desvirtuar la naturaleza de la obligación de defender y convertirla en una mera acción de reembolso por los gastos en los que incurra el principal para defenderse. Eso no es lo que surge del contrato.
III
A. La sentencia sumaria es un mecanismo procesal que permite resolver controversias en casos donde no es necesaria la celebración de un juicio. Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010). Hemos reiterado que este mecanismo “facilita la solución justa, rápida y económica de los litigios civiles cuando éstos no presentan controversias genuinas de hechos materiales”. Id., pág. 214. Para determinar “si existen controversias de hechos que impiden dictar una sentencia sumaria, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción de oposición, así como los que obren en el expediente *17 del tribunal”. íd., pág. 216, citando a Cruz Marcano v. Sánchez Tarazona, 172 DPR 526, 550 (2007). Véase, además, la Regla 36.3 de Procedimiento Civil, 32 LPRAAp. V. Igualmente, la Regla 36.3(c) de Procedimiento Civil, supra, establece que, una vez presentada una moción de sentencia sumaria, “la parte contraria [...] estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede”. Véase, además, SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013).
En esta misma línea, hemos expresado que “para que proceda una moción de sentencia sumaria no solo se requiere la inexistencia de hechos en controversia, sino que la sentencia tiene que proceder conforme al derecho sustantivo aplicable”. (Enfasis suprimido). Ortiz v. Holsum, 190 DPR 504, 525 (2014).
B. En este caso, el foro primario debía resolver si a la luz de la cláusula en cuestión y de las alegaciones en la demanda de la señora Burgos López se activaba la obligación de Ray de defender o proveer representación legal a Posadas. De contestar en la afirmativa, entonces procedía determinar si Ray incumplió con esa obligación.
El texto del contrato suscrito entre Posadas y Ray fue estipulado por las partes. De igual forma, es un hecho incontrovertido que el 7 de enero de 2009, los esposos BurgosMercado presentaron una demanda en contra de Posadas y Ray. Como discutimos previamente, en esa demanda se alegó que la caída que sufrió la señora Burgos López fue, en parte, como consecuencia de la negligencia de Ray. Por lo tanto, no abusó de su discreción el foro primario al resolver mediante sentencia sumaria que, a la luz de la cláusula de hold harmless, el deber de defender de Ray se activó con la presentación de la reclamación de la señora Burgos López.
Por otro lado, conforme a las cartas estipuladas por las partes en corte abierta, una vez Posadas notificó a Ray del incidente de la señora Burgos López y le requirió que cum *18 pliera con su obligación de defenderlo de esa reclamación, Ray se negó a hacerlo y condicionó el cumplimiento de este deber a que primero se probara que hubo negligencia. Ray reiteró esta postura en el informe sobre conferencia con antelación al juicio. Apéndice, pág. 150. Por lo tanto, resolvemos que actuó correctamente el Tribunal de Primera Instancia al determinar que no existía controversia de hechos materiales sobre este asunto y resolver mediante sentencia sumaria que Ray incumplió con su obligación de defender. La evidencia en el expediente así lo sustentaba.
Finalmente, es menester que nos expresemos sobre el planteamiento de Ray en cuanto a que el monto de los gastos y honorarios de abogado que solicita Posadas es irrazonable. De un estudio del expediente se desprende que Posadas incluyó en su moción de sentencia sumaria una declaración jurada del licenciado Colón Pagán en la que certifica la cantidad facturada por servicios legales prestados a Posadas en el caso de autos, así como copia de las facturas y los cheques pagados por esos servicios. Apéndice, págs. 557-633. Ray, por su parte, se cruzó de brazos y no se opuso ni controvirtió ese hecho, por lo que el Tribunal de Primera Instancia correctamente lo dio por incontrovertido y admitido.
Si Ray entendía que la cantidad presentada por Posadas por ese concepto era irrazonable, el momento de oponerse era durante los procedimientos ante el foro primario mediante una moción en oposición a la solicitud de sentencia sumaria de Posadas; no era a nivel apelativo. Es norma conocida que “las partes no [...] pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo”. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). Es por esto que el Tribunal de Primera Instancia actuó correctamente al incluir como hecho incontrovertido en la sentencia sumaria el monto de $59,880.67 por los gastos y honorarios de abogado pagados por Posadas hasta ese momento.
*19 Igualmente, nos parece sumamente acomodaticia la posición de Ray al alegar ante el Tribunal de Apelaciones por primera vez que en este caso no procede la sentencia sumaria dado que existen controversias sobre hechos materiales. Esta postura es sorprendente, pues fue Ray quien primero presentó una moción de sentencia sumaria en la que planteó que por no existir controversias de hechos y solo restar por dilucidarse asuntos “de carácter puramente contractual, interpretación de cláusulas, planteamientos de estricto derecho”, procedía que se dictara sentencia sumaria a su favor. Apéndice, págs. 166-175. No podemos avalar que un litigante cambie su postura ante el foro intermedio, sin explicación alguna, para entonces plantear por primera vez que existen hechos materiales en controversia que hasta entonces se entendía que no existían. Ello constituye un abuso del proceso que no podemos permitir.
IV
Por todo lo expuesto, revocamos al Tribunal de Apelaciones y reinstalamos la sentencia del Tribunal de Primera Instancia, Sala de Superior de San Juan. Además, devolvemos el caso a ese foro para que determine el monto pagado por Posadas por representación legal desde el momento en que el foro de instancia dictó sentencia hasta el presente y ordene a Ray reembolsar a Posadas esa cantidad.
La Jueza Presidenta Señora Fiol Matta emitió una opinión concurrente. La Juez Asociada Señora Rodríguez Rodríguez concurrió sin opinión escrita.

 Al igual que otros tribunales, solamente extrapolamos este análisis de los contratos de seguros para evaluar la obligación de defender o proveer representación *13 legal en un contrato de indemnización como el de este caso. Véanse: English v. BGP Intern., 174 SW3d 366 (Tex. App. 2005); General Motors Corp. v. American Ecology Environmental Services Corp., No. Civ.A.399CV2625L, 2001 WL 1029519 (N.D. Tex. 2001); St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., 475 P.2d 69 (Or. 1970). Al así hacerlo, no estamos alterando las normas de interpretación de ninguno de los dos tipos de contrato. De esta forma, en casos de duda, los contratos de seguros se continúan interpretando de forma favorable al asegurado, mientras que los contratos de indemnización se interpretan contra la liberación de responsabilidad. Véanse: S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372, 386 (2009); Cabrera v. Doval, 76 DPR 777, 781 (1974). No obstante, reiteramos que la obligación de defender es independiente del deber de indemnizar.